**In re Karen L. SANTANA, Debtor.**

**Bankruptcy No. SK 89–02040.**

United States Bankruptcy Court,
W.D. Michigan.

Feb. 16, 1990.

James Booth Burr, Jr., Grand Rapids, Mich., for Sturgis Enterprises, Inc.

Bruce Struble, Struble & Struble Law Offices, Battle Creek, Mich., for Karen Santana.

Joseph A. Chrystler, Trustee, Kalamazoo, Mich.

## MEMORANDUM OPINION AND ORDER RE: APPLICATION OF 11 U.S.C. SECTION 109(g)(2)

JO ANN C. STEVENSON,
Bankruptcy Judge.

As the proceeding before the court is core pursuant to 28 U.S.C. Section 157(b)(2)(A), I have jurisdiction to enter a final order or judgment on the question of the appropriate application of 11 U.S.C. Section 109(g)(2).

On November 25, 1988, Karen L. Santana ("Santana") filed a petition in bankruptcy under Chapter 13. On January 4, 1989, Ford Motor Credit Corporation ("FMCC") filed a motion for relief from the automatic stay. Santana and FMCC then entered into a stipulation for adequate protection on March 3, 1989 and on March 10, 1989 the court granted FMCC adequate protection. On May 27, 1989, Santana voluntarily dismissed her Chapter 13 only to again seek relief under Chapter 13 on June 1, 1989. At some point in October, Santana and FMCC entered into an agreement whereby Santana voluntarily turned over the 1988 Ford Bronco securing FMCC's claim and granted FMCC relief from the automatic stay so it could sell its collateral.[1]

Subsequently, on November 7, 1989 Sturgis Enterprises ("Sturgis"), filed objections to confirmation of Santana's most recent Chapter 13 plan arguing that 11 U.S.C. Section 109(g)(2) requires that the court dismiss Santana's case.

Section 109(g)(2) states as follows:

Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—

(2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

Sturgis maintains that because Santana's dismissal was voluntary and her subsequent refiling of Chapter 13 was within 180 days of her previous Chapter 13, Section 109(g)(2) mandates dismissal of her current Chapter 13. Since the section is unambiguous, any attempt to discern legislative intent outside the plain words of the statute is inappropriate. Thus, Sturgis contends, the court has no discretion in applying the statute to the facts at hand.

Conversely, Santana argues that this section only applies when a motion for relief from stay is pending at the time of the voluntary dismissal. Because FMCC's motion for lift of stay had been withdrawn, there was no motion pending when Santana voluntarily dismissed her Chapter 13. She was therefore free to refile within 180 days without running afoul of Section 109(g)(2).

I recognize that several courts have focused on whether a motion for relief from stay was pending at the time of the debtor's voluntary dismissal in deciding whether application of Section 109(g)(2) is mandated. *Matter of Patton,* 49 B.R. 587 (Bkrtcy.M.D.Ga.1985); *In re Denson,* 56 B.R. 543 (Bkrtcy.N.D.Ala.1986); *Matter of Milton,* 82 B.R. 637 (Bkrtcy.S.D.Ga.1988). I do not decide this case on that basis, however, since I believe that disposition here must be based upon first ascertaining the problem which Congress intended to cure when it enacted Section 109(g)(2).

In commenting on the Supreme Court's *United States v. American Trucking Assns.,* 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940) decision, the Honorable Arthur J. Spector in *In re Keinath Bros. Dairy Farm,* 71 B.R. 993 (1987), noted:

Now, it seemed, history may be considered an appropriate resource for finding the meaning of an otherwise clear and unambiguous statute if: 1) its literal application would yield an absurd result; 2) its literal application would yield an ineffective or futile result; or 3) the clear intent of Congress was to do something other than what it said in the statute.

---

1. On May 18, 1989 FMCC filed its objection to confirmation including a Section 109(g)(2) motion for dismissal. That motion along with FMCC's objection was withdrawn on October 13, 1989 as part of Santana's agreement to return FMCC's collateral.

Thus although the statute is unambiguous, to apply it literally to the facts now before me in my opinion would produce, if not an absurd result, then certainly one which goes far beyond the scope of the abuse which it appears Congress was attempting to cure.

130 Cong.Rec. S8891 (daily ed. June 29, 1984), reprinted in 1984 U. S.Code Cong & Ad.News 590, 597–98 (statements of Sen. Hatch) when speaking of the Consumer Credit Amendments of which section 109(f) [codified as 109(g)] is a part, states: "The number of consumer bankruptcy cases filed has risen dramatically each year since the bankruptcy code was last amended in 1978. Title II [sic] contains over 30 substantive amendments to curb abuses of the bankruptcy code and make its use truly a last resort."

As stated in *Matter of Patton,* 49 B.R. 587 (Bkrtcy 1985):

[S]ection 109(g)(2) is intended to address the situation in which the debtor files a bankruptcy case to stay a foreclosure, and when the creditor seeks relief from the automatic stay, the case is then voluntarily dismissed by the debtor. The debtor then refiles prior to the creditor's completing his next attempt to foreclose, and through this scheme, the debtor can continually frustrate the creditor's attempts to foreclose.

The court in *In re Keul,* 76 B.R. 79 (Bkrtcy.E.D.Pa.1987) acknowledged that:

The design of the 1984 consumer credit amendments, such as section 109(f), was to respond to Congressionally perceived abuses of various provisions of the Bankruptcy Code by individual debtors ... In large measure, Section 109(g)(2) is the Congressional response to the perceived abuse of 11 USC 1307(b), which allows a chapter 13 debtor the absolute right to dismiss his case at any time, so long as the case was not converted.

And in *In re Ransom,* 60 B.R. 19 (Bkrtcy.E.D.Pa.1986) the court cites 2 Collier on Bankruptcy Para. 109.06, at 109–27 (15th ed.1985):

Thus section 109(f) [now codified as 109(g)] prevents certain tactics on the debtor's part that could be deemed abusive ... The debtor who obtains dismissal of the case when faced with a motion for relief from the section 362 automatic stay may not immediately refile and thereby frustrate creditors' attempts at having their rights adjudicated within a reasonable period of time.

The above statement summarizes the common thread that runs through the cases cited by both Santana and Sturgis: Section 109(g)(2) was created to curb the abuse of multiple filings under the Bankruptcy Code.

Most helpful is the *Keul* court's further explanation of the perceived purposes of Section 109(g)(2).

By dismissing and then refiling, a debtor could avoid the consequences of a creditor's obtaining relief from the stay because refiling once again brings into play the automatic stay provisions of section 362(a). By timing the refiling for the eve of sheriff's sale, the debtor could frustrate indefinitely the ability of a secured creditor to foreclose. 76 B.R. at 80.

Admittedly, Santana never indicated to the court why she filed, voluntarily dismissed and then quickly refiled her Chapter 13 bankruptcy. Absent evidence to the contrary, however, one cannot conclude that she did so simply to "string out" Sturgis' alleged secured claim[2] when Sturgis never filed a motion seeking relief from stay in the first proceeding and was therefore unharmed by the voluntary dismissal and the subsequent refiling five days later.

---

**2.** Although Sturgis has alternately claimed status as a secured creditor and lessor as to collateral consisting of computer equipment and some "1300 video tapes" the court was informed that Santana had agreed to return the computer equipment to Sturgis. As to the remaining collateral of "1300 video tapes", I ruled on December 21, 1989 that Sturgis was neither lessor nor perfected secured creditor. The proofs showed that at best that Santana intended to grant Sturgis a security interest in the tapes. As there was no writing evidencing the grant of a security interest, however, Sturgis only has an unsecured claim. *See In re Shinville,* 46 B.R. 352 (Bkrtcy. W.D.Mich.1985).

Having failed to seek relief from stay in the original Chapter 13, assuming it could successfully have done so, Sturgis was not prejudiced when Santana refiled her Chapter 13 within 180 days of her original voluntarily dismissed Chapter 13. Upon refiling Sturgis was simply in the same position it was in five days previously.

Nor was there any evidence that the initial filing or subsequent refiling was on the eve of a foreclosure sale. Cf. *In re Smith*, 58 B.R. 603, 605 (W.D.Pa.1986) and *In re Bigalk*, 813 F.2d 189 (8th Cir.1987). No proof was offered as to Santana's "bad faith" other than the uncontested fact of the subsequent filing. As to the latter, the Sixth Circuit has instructed that the frequency with which the debtor has sought relief under the Code is only one of a number of factors which the court must consider in determining debtor's good faith or lack thereof under 11 U.S.C. Section 1325(a)(3). *In re Okoreeh–Baah*, 836 F.2d 1030 (6th Cir.1988); *In re Doersam*, 849 F.2d 237 (6th Cir.1988); *In re Caldwell*, 851 F.2d 852 (6th Cir.1988); and *In re Caldwell*, 895 F.2d 1123 (6th Cir.1990).

In *In re Samuel*, 77 B.R. 520 (Bkrtcy.E.D.Pa.1987), the court, citing *Ransom, supra*, noted:

> [I]f the circumstances of the Debtor failed to fit snugly into the confining language of section 109(g), it was held that dismissal on the basis of this section was inappropriate.

> \*   \*   \*   \*   \*   \*

> [W]hen a debtor's factual pattern does not fit precisely within the confines of 11 U.S.C. 109(g), the creditor bears a heavy burden to succeed in a dismissal motion based upon multiple filings of the debtor. Congress has spoken in response to complaints of this type of purported bankruptcy abuse, and prevented multiple filings in certain circumscribed situations. It would fly in the face of Congressional intent to dismiss cases which do not fit these circumscribed situations on the basis of a distinct multiple filing scenario. 77 B.R. at 522.

**3.** In deciding this case I again reiterate that I do not here decide whether Section 109(g)(2) only

As in *Samuel*, the fact that Sturgis did not allege the filing of its motion for relief from stay in the prior bankruptcy is dispositive. Had Sturgis done so, it would have brought Santana's circumstances within the scope of section 109(g)(2), and subject to the direct impact of that Code provisions.[3]

To grant Sturgis' motion to dismiss under Section 109(g)(2) not only unjustifiably rewards Sturgis' prior inactivity at the expense of Santana and presumably her other creditors but may well go far beyond the scope of abuse which the court believes Congress intended to cure by enacting this Code Section.

This result is further required since it is now clear that Sturgis' status is merely as an unsecured creditor. The granting of its motion under such circumstances would further widen the reach of Section 109(g)(2) and may well produce an absurd result. And the literal application of Section 109(g)(2) would produce a futile result since more than 180 days has passed since May 27, 1989, the date of Santana's voluntary dismissal. Accordingly, Santana could refile her Chapter 13 tomorrow with impunity.

The motion to dismiss of Sturgis Enterprises, Inc., is hereby denied.

applies if voluntary dismissal occurs while a motion for relief from stay is pending.