**Henry Eugene TOOKE, III d/b/a H.E. Tooke Trucking and Material, Edith M.B. Tooke, d/b/a H.E. Tooke Trucking and Material, Appellants,**

v.

**SUNSHINE TRUST MORTGAGE TRUST # 86–225, Appellee.**

No. 92–181–CIV–ORL–19.
Bankruptcy No. 91–2684–3P1.

United States District Court,
M.D. Florida,
Orlando Division.

May 22, 1992.

On Motion for Clarification, June 22, 1992.

William Francis Lawless, Sr., Kevin E. Mangum, Law Office of William F. Lawless, P.A., Altamonte Springs, FL, for Henry Eugene Tooke, III and Edith M.B. Tooke.

Jon Eric Kane, Lawrence, Landis & Morgan, P.A., Orlando, FL, Emory Robert Meek, Foley & Lardner, Jacksonville, FL, for Sunshine State Mortg. Trust No. 86–225.

## ORDER

FAWSETT, District Judge.

1. Appellants' Emergency Motion for Stay Pending Appeal and Memorandum of Law in Support thereof (Doc. No. 11, filed April 27, 1992); Appellee's Response in Opposition to Appellants' Emergency Motion for Stay Pending Appeal (Doc. No. 13, filed May 7, 1992); Transmittal of Record to District Court (Doc. No. 1, filed February 25, 1992); Initial Brief of Appellant (Doc. No. 5, filed March 13, 1992); and Initial Brief of Appellee (Doc. No. 7, filed March 30, 1992). All parties were represented by counsel.

After considering the filings in the case and the argument of counsel, the Court enters its Order as follows:

## FINDINGS OF FACT

This case is on appeal from the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division, pursuant to Rule 8001 of the Federal Rules of Bankruptcy Procedure and 28 U.S.C. § 158. Appellants have filed an Emergency Motion for Stay Pending Appeal pursuant to Rule 8005 of the Federal Rules of Bankruptcy Procedure.

On April 11, 1991, Appellants filed for bankruptcy under Chapter 12 of Title 11, the reorganization plan for debtors qualifying under 11 U.S.C. § 101(17), (18), (19) and (20) as family farmers with regular annual income. At the first creditors' meeting on May 20, 1991, Appellants realized that they were ineligible to file under Chapter 12 because they did not meet the requirement that more than 50 percent of the debtor's income for the preceding taxable year must be derived from farming operations. *See* 11 U.S.C. § 101(17). One of Appellants' creditors, Great Southern Machinery, Inc., not a party to this proceeding, filed a Motion for Relief from the Automatic Stay on May 20, 1991. Two days later, at a status conference, counsel for Appellants orally moved to dismiss the Chapter 12 case, recognizing Appellants' ineligibility. On that date, May 22, 1991, Judge Corcoran entered an order dismissing Appellants' bankruptcy case.

The next day, May 23, 1991, Appellants filed for bankruptcy under Chapter 11 of Title 11 with the bankruptcy court in the Jacksonville Division. On May 24, 1991, Great Southern Machinery, Inc. filed a Motion to Dismiss pursuant to 11 U.S.C. § 109(g)(2), which motion was subsequently withdrawn. Sunshine State Mortgage Trust # 86–225 (Appellee) filed a Motion to Dismiss on July 23, 1991.

A hearing was held on September 19, 1991, and Judge Proctor granted Appellee's Motion to Dismiss on December 6, 1991. *See In re Tooke*, 133 B.R. 661 (Bankr. M.D.Fla.1991). Appellants' Motion for Re-

hearing was heard and denied on January 28, 1992. On that same day, Appellants filed a Notice of Appeal with this Court.

Sometime after the bankruptcy case was dismissed, Appellee filed a foreclosure action against Appellants in state court. On February 4, 1992, Appellants filed a Motion for Stay Pending Appeal. A hearing was held on April 16, 1992, and Judge Proctor granted a thirty (30) day stay effective April 27, 1992.

### CONCLUSIONS OF LAW

■ Rule 8005 of the Federal Rules of Bankruptcy Procedure states in pertinent part:

> A motion for a stay of the judgment, order, or decree of a bankruptcy judge, for approval of a supersedeas bond, or for other relief pending appeal must ordinarily be presented to the bankruptcy judge in the first instance.... A motion for such relief, or for modification or termination of relief granted by a bankruptcy judge, may be made to the district court or the bankruptcy appellate panel, but the motion shall show why the relief, modification, or termination was not obtained from the bankruptcy judge....

Appellants have satisfied this procedural rule by first seeking the requested stay from the bankruptcy judge. Judge Proctor in his "Order Granting for Thirty Days Debtors' Motion for Stay Pending Appeal Pursuant to Federal Rule of Bankruptcy Procedure 8005" instructed Appellants that they "may seek further relief within the thirty (30) day period from the United States District Court." Thus, Appellants filed this Emergency Motion for Stay Pending Appeal in compliance with Rule 8005 and Judge Proctor's Order.

The standard to obtain a stay pending an appeal from a bankruptcy court pursuant to Rule 8005 was articulated in *In re The Charter Company*, 72 B.R. 70 (M.D.Fla. 1987).

> [T]he movant must clearly establish: (i) that the movant is likely to prevail on the merits of its appeal, (ii) that the movant will suffer irreparable injury if a stay or other injunctive relief is not granted, (iii)

that other parties will suffer no substantial harm if a stay or other injunctive relief is granted, and (iv) in circumstances where the public interest is implicated, that the issuance of a stay or other injunctive relief will serve, rather than disserve, such public interest.

*Id.* at 71–72.

### A. Likelihood of Success on the Merits of the Appeal

■ Appellee contends that the stay must be denied because Appellants can not prove that they are likely to prevail on the merits of their appeal from the Order Granting Motion to Dismiss entered by the Bankruptcy Court on December 6, 1991.

Section 109(g)(2) of the Bankruptcy Code states as follows:

> Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if ...
>
> (2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

Judge Proctor granted Appellee's motion to dismiss, concluding that Appellants were not entitled to be debtors under Title 11 of the United States Code since, within the 180 days preceding the filing of Appellants' Chapter 11 case, they had been debtors in a prior Chapter 12 case where they requested and obtained a voluntary dismissal following the filing of a request for relief from the automatic stay under 11 U.S.C. § 362. Judge Proctor ruled that the application of § 109(g)(2) is mandatory, and the debtors' motives in dismissing the prior case are irrelevant.

In 1984, Congress enacted § 109(f), the predecessor to § 109(g), in the Bankruptcy Amendments and Federal Judgeship Act of 1984. Pub.L. No. 98–353, 98 Stat. 352 (1984). In 1986, § 109(f) was renumbered to § 109(g) without substantive change. Pub.L. No. 99–554, 100 Stat. 3105 (1986).

The purpose of § 109(g)(2) is creditor protection.

[S]ection 109(g) prevents certain tactics on the debtor's part that could be deemed abusive ... The debtor who obtains dismissal of the case when faced with a motion for relief from the section 362 automatic stay may not immediately refile and thereby frustrate creditors' attempts at having their rights adjudicated within a reasonable period of time.

2 Collier on Bankruptcy, § 109.32 (15th ed. 1991).

Further, the Senate Report to the Bankruptcy Amendments and Federal Judgeship Act of 1984 states that "[s]ection (f) adds a new paragraph to section 109. The purpose of the new paragraph is to provide the court with greater authority to control abusive multiple filings." *In re Hicks*, 138 B.R. 505 (Bankr.D.MD.) (citing S.Rep. No. 65, 98th Cong., 1st Sess. 74 (1984)).

There has been a split of authority in bankruptcy cases interpreting § 109(g)(2) based on

whether a good faith standard should be written into the statutory language by the courts in determining whether the debtor's dismissal of the previous case and refiling of a subsequent case was in bad faith and so abusive as to prevent the second case from proceeding, or whether such a good faith standard is simply not permitted and the mechanical 180 day rule must be applied without regard to the reasons for the dismissal.

*In the Matter of Milton*, 82 B.R. 637 (Bankr.S.D.Ga.1988) (An absolute mechanical application of the rule of Section 109(g)(2) should not be applied in all instances). *But see In re Denson*, 56 B.R. 543 (Bankr.N.D.Ala.1986) (The court has no choice but to apply the 180-day rule).

This Court has not previously determined whether the application of § 109(g)(2) is mandatory or discretionary. The Eleventh Circuit has not addressed this issue either.

While the Fifth Circuit did not reach the issue whether application of § 109(g) is mandatory or discretionary, the *Phillips* court clearly disagreed with the line of reasoning of some bankruptcy courts holding that the application of § 109(g) is mandatory. In determining that it lacked appellate jurisdiction to hear an appeal of an interlocutory bankruptcy order, the Fifth Circuit disagreed with the cases holding that § 109(g) is a jurisdictional requirement. *See In the Matter of Phillips*, 844 F.2d 230, 235 n. 2 (5th Cir.1988); *but see In re Denson*, 56 B.R. 543 (Bankr.N.D.Ala. 1986); *In re Keziah*, 46 B.R. 551 (Bankr. W.D.N.C.1985) (these two cases held that whether a debtor is eligible under § 109(g) is jurisdictional, therefore a court does not have discretion to apply § 109(g)).

The Eighth Circuit found that the bankruptcy court properly dismissed the debtors' Chapter 13 petition pursuant to § 109(f) [later § 109(g) ]. *In re Bigalk*, 813 F.2d 189, 190 (8th Cir.1987) (The court did not address the issue of mandatory application of the section; however, three times the debtors filed Chapter 13 on "the eve" of a scheduled foreclosure sale after the previous filing had been voluntarily dismissed following a request for relief from the automatic stay. The bankruptcy court dismissed the third petition, finding that it was filed in bad faith).

The Ninth Circuit Bankruptcy Appeal Panel has addressed whether § 109(g)(2) is mandatory or discretionary and determined that the application of that section prohibiting repeat filings is not mandatory. *In re Luna*, 122 B.R. 575, 576 (9th Cir. BAP1991). In *In re Luna*, the home mortgagee creditor had been granted relief from the automatic stay, after which the debtor's Chapter 13 case was voluntarily dismissed. *Id.* The bankruptcy court had ordered the creditor to provide the debtor with a financial statement detailing the funds necessary to both reinstate and pay off the loan on the debtor's home. *Id.* A dispute arose on whether the creditor followed through with the court's order. *Id.* The debtor filed a second Chapter 13 case approximately one month after her first case was dismissed. *Id.* With knowledge of the debtor's Chapter 13 filing and the debtor's offer of $10,000 to cancel the foreclosure action, the creditor authorized its agent to proceed with the foreclosure sale.

*Id.* The debtor filed an objection to the creditor's foreclosure sale claiming that it violated the automatic stay; the creditor then moved to dismiss the debtor's second Chapter 13 case based on § 109(g)(2). *Id.* On appeal, the court concluded that the equities of the case dictated a finding that the application of § 109(g)(2) is discretionary. *Id.*

Appellee maintains that two recent Supreme Court decisions mandate that Appellants' bankruptcy case was properly dismissed under § 109(g)(2). Appellee cites *Toibb v. Radloff*, —— U.S. ——, ——, 111 S.Ct. 2197, 2200, 115 L.Ed.2d 145 (1991), for the proposition that where there is no ambiguity in the language of the statute, a court may not resort to legislative history or other policy considerations in determining its applicability. According to Appellee, since the language of § 109(g)(2) is clear, the application of the statute in the instant case is mandatory. Appellants conclude that *Toibb* is not dispositive of the issue presented in their appeal because that case did not concern § 109(g)(2).

The *Toibb* Court's reference to the clarity of § 109 is dicta. The Court said that the statutory language is not unclear in § 109 and therefore, there is no need to turn to legislative history. *Id.* However, in the very next paragraph of its opinion, the Court referred to the legislative history of § 109(d) and found it not helpful. *Id.*

The second case cited by Appellee is *Johnson v. Home State Bank*, —— U.S. ——, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991). The *Johnson* case reviewed whether an *in rem* mortgage interest was a "claim" to be included in a Chapter 13 plan even though personal liability on the mortgage was discharged in a previous Chapter 7 case. *Id.* In dicta, the Court found that Congress did not intend to foreclose serial filings of Chapter 7 and Chapter 13 petitions because Congress did not expressly prohibit such filings. *Id.* —— U.S. at ——, 111 S.Ct. at 2156. In contrast, Congress had expressly prohibited other forms of serial filings such as that contained in 11 U.S.C. § 109(g) (no filings within 180 days of dismissal). *Id.* Again, Appellants maintain that the *John-*

*son* case is not dispositive of the issue in their appeal. Considering that the Court only briefly mentioned § 109(g) in dicta, and the Court did not address whether § 109(g)(2) implies a good faith element, *Johnson* is not determinative of the issue whether Appellants are foreclosed from the possibility of succeeding on the merits of their appeal.

In two cases the debtors' motions for stay pending appeal of a bankruptcy order dismissing the debtors' petitions for bankruptcy were denied. *In re Smith*, 58 B.R. 603 (W.D.Penn.1986); *In re Keziah*, 53 B.R. 116 (W.D.N.C.1985). While these courts held that the application of § 109(f) [later § 109(g)] is mandatory, both of these cases can be factually distinguished from the instant case. The *Smith* court found that the debtors had acted in bad faith by filing three successive Chapter 13 cases on "the eve" of foreclosure which evidenced an abuse of process. *Smith*, 58 B.R. at 604. The *Keziah* debtor had received protection under the bankruptcy laws for four years and during three Chapter 13 proceedings. *Keziah*, 53 B.R. at 117. The *Smith* and *Keziah* cases represent the kind of abuses which Congress intended to curb by enacting § 109(f).

> [S]ection 109(g)(2) is intended to address the situation in which the debtor files a bankruptcy case to stay a foreclosure, and when the creditor seeks relief from the automatic stay, the case is then voluntarily dismissed by the debtor. The debtor then refiles prior to the creditor's completing his next attempt to foreclose, and through this scheme, the debtor can continually frustrate the creditor's attempt to foreclose.

*In re Santana*, 110 B.R. 819, 821 (Bankr. W.D.Mich.1990). The *Santana* court did not apply § 109(g)(2) despite the unambiguous language of the statute. *Id.* 820–21. Although the *Santana* debtor petitioned for a second Chapter 13 case five days after obtaining a voluntary dismissal of her first Chapter 13 case, the court held that the debtor's circumstances did not fit precisely within the confines of § 109(g)(2). *Id.* at 822. Prior to the dismissal of her first Chapter 13 case, the debtor and the

692

creditor who had filed for relief from the automatic stay entered into a stipulation on adequate protection. *Id.* The creditor moving to dismiss the debtor's second Chapter 13 case had not sought relief from the automatic stay in the first Chapter 13 case. *Id.* at 822. The court denied the motion to dismiss finding that the creditor "was simply in the same position it was in five days previously." *Id.* "To grant [the creditor's] motion to dismiss under Section 109(g)(2) not only unjustifiably rewards [the creditor's] prior inactivity at the expense of Santana and presumably her other creditors but may well go far beyond the scope of abuse which the court believes Congress intended to cure by enacting this Code Section." *Id.*

Other courts have refused to follow a strict, technical application of § 109(g)(2) because to do so would produce absurd results and "fly in the face of Congressional intent to dismiss cases which do not fit these circumscribed situations on the basis of a distinct multiple-filing scenario." *In re Samuel,* 77 B.R. 520 (Bankr. E.D.Penn.1987) (Although the debtor made multiple filings, he made payments to the mortgagee during the period of these filings. Also, the mortgagee did not seek relief from the automatic stay in the debtor's prior or present filings.) *See In re Hicks,* 138 B.R. 505 (Bankr.D.MD.) (Section 109(g)(2) applies when both the requesting and obtaining of the voluntary dismissal are preceded by a request for relief from the automatic stay because the type of abuse the section seeks to curb does not exist where the request for voluntary dismissal precedes the filing of the request for relief from the automatic stay.); *In re Milton,* 82 B.R. 637 (Bankr.S.D.Ga.1988) (The refiling occurred after the parties, in good faith, had worked out an agreement regarding the motion for relief from the automatic stay in the preceding case.); *In re Keul,* 76 B.R. 79 (Bankr.E.D.Penn.1987) (Without reaching a determination on whether § 109(g)(2) must be followed literally, the court dismissed the debtor's second Chapter 13 case filed two weeks after dismissal of a prior petition. The debtor testified that he filed the second Chapter

13 case to forestall an impending foreclosure sale of his home. In granting the dismissal, the court reasoned that the debtor's conduct was the very harm that § 109(g)(2) was intended to prevent.); *In re Ransom,* 60 B.R. 19 (Bankr.E.D.Penn.1986) (The debtor requested a voluntary dismissal one day prior to the creditor seeking relief from the automatic stay; both the requesting and obtaining of the voluntary dismissal have to follow the request for relief from the automatic stay.); *In the Matter of Patton,* 49 B.R. 587 (Bankr. M.D.Ga.1985) (The motion to dismiss based on multiple filings under § 109(f)(2) [later § 109(g)(2) ] was denied because the creditor had received all the relief from the automatic stay that was requested in the first bankruptcy case.); *In re Nelkovski,* 46 B.R. 542 (Bankr.N.D.Ill.1985) (The motion to dismiss was granted because the debtor had a history of repeated filings under various chapters of the Code, and the debtor had not made mortgage payments for four years. However, the court concluded that the language of section 109(f) [later 109(g) ] calls for case-by-case determinations premised upon a factual inquiry).

Finally, two cases factually similar to the instant case demonstrate that had Appellants waited for the court or a creditor to move for dismissal of the Chapter 12 case, section 109(g)(2) would not be pertinent to their case. In *In re Gamble,* a creditor moved to dismiss the debtors' Chapter 13 case on the grounds that the debtors' debts exceeded the permitted amount of debt under § 109(e). *In re Gamble,* 72 B.R. 75, 76 (Bankr.D.Idaho 1987). Although the dismissal followed a request for relief from the automatic stay, the debtors were not barred by § 109(g)(2) from filing a petition for Chapter 12. *Id.* The debtors' admission as to their Chapter 13 ineligibility and their failure to oppose the dismissal did not constitute a voluntary dismissal within the purview of § 109(g)(2). *Id.* Similarly, a debtor who exceeded the debt limitations under Chapter 12 was not precluded from filing a second bankruptcy case under Chapter 11 because the court ordered dis-

missal of the Chapter 12 case pursuant to § 105(a). *In re Henderson Ranches*, 75 B.R. 225 (Bankr.D.Idaho 1987). To avoid a possible § 109(g)(2) situation, the court initiated the dismissal. *Id.* at 226.

Despite the unsettled issue concerning the literal versus discretionary application of § 109(g)(2), the facts of the instant case do not implicate the kind of abuses Congress intended to curb by enacting § 109(g)(2). It has not been suggested that Appellants' petition under Chapter 12 was in bad faith. Similar to *In re Santana* and *In re Samuel*, Appellee did not request relief from the automatic stay during Appellants' Chapter 12 case. Therefore, Appellants' refiling under Chapter 11 one day after the voluntary dismissal of their Chapter 12 case did not put Appellee in a worse position. Finally, counsel for Appellants came forward, as an officer of the court, and moved for voluntary dismissal recognizing his clients' ineligibility. Appellants' apparent good faith effort to cooperate in the bankruptcy proceedings led to their voluntary dismissal of the Chapter 12 case. But for this good faith effort, there may have been an involuntary dismissal of Appellants' Chapter 12 case, and § 109(g)(2) would have been inapplicable to Appellee's motion to dismiss.

For the foregoing reasons and to avoid absurd results through a mandatory application of § 109(g)(2) to the instant facts, the Court finds that Appellants are likely to prevail on the merits of their appeal.

### B. Irreparable Injury

Appellee claims that monetary injury alone is not enough to establish irreparable injury. *Drislor Associates v. Metro North State Bank (In re Drislor)*, 110 B.R. 937, 939 (D.Col.1990). In the *Drislor* case, however, the creditor opposing the motion for a stay pending appeal of a bankruptcy court order had been granted relief from the automatic stay. *Id.* Additionally, the debtor had initiated a lender liability action

against the creditor giving the debtor an adequate remedy at law. *Id.*

Appellants maintain that if the stay is not granted, they will not only lose their purported $400,000 equity[1] in the property subject to the foreclosure action, but they will also lose their only means of income.

### C. Loss to Other Parties from a Stay

Appellee claims that their interest in the secured property will be irreparably harmed if a stay pending appeal is granted. Appellee filed an Emergency Motion for Temporary Injunction in the state court foreclosure action which was stayed by the bankruptcy court's order granting a stay pending appeal for thirty days. Appellee sought to enjoin Appellants from performing any further dredging, excavation or sale of soil, dirt or land from the secured property. According to Appellee, evidence was presented at an April 14, 1992 hearing held on the Emergency Motion showing that: (1) Appellants have excavated over forty-five (45) acres of the secured property in contravention of the mortgage terms, (2) Appellants were not in compliance with the excavation permit issued by Volusia County, Florida, and (3) Appellants had already removed and sold approximately $1,179,000 of land (655,000 yards @ $1.80 per yard) and plan to remove and sell an additional $1,400,000 of land (800,000 yards @ $1.80 per yard) without compensation to Appellee or making any payments under the mortgage. The evidentiary hearing was continued until April 28, 1992; however, the bankruptcy court's order of April 27, 1992 stayed the continued hearing. Further, Appellee contends that Appellants are unable to provide sufficient adequate protection as required by 11 U.S.C. § 362(d)(1).

Appellants maintain that the property which is subject to Appellee's foreclosure action has a provable value of $720,000 with a mortgage debt of only $300,000. Accordingly, Appellants maintain that Appellee is fully and overly secured and would suffer no substantial harm if a stay

---

**1.** Appellants had an appraisal done on the property which is subject to Appellee's foreclosure action. There is some disagreement on the appraised value of the property. Appellants' counsel contends that the appraised value is $700,-

000. Appellee's counsel maintains that the appraised value without excavation is $409,000. The amount of the mortgage is $300,000 with monthly payments of $5,000.

pending appeal is granted. Further, Appellants claim that they have offered to pay to Appellee the sum of $3,000 per month representing the monthly interest payment on the debt if a stay is granted until the appeal is adjudicated. The parties are in disagreement regarding Appellee's knowledge and consent of the extent of Appellant's excavation on the land.

The Federal Rules of Bankruptcy Procedure allow the district court to condition the relief it grants under Rule 8005 on the filing of a bond or other appropriate security with the bankruptcy court. In granting a stay, the Court will order Appellants to provide Appellee with adequate security during the pendency of this appeal.

### D. The Public Interest

■ Appellants contend that the public interest is not an issue in this case. In contrast, Appellee suggests that the public interest would not be served by granting a stay pending appeal since the application of § 109(g)(2) in this case furthers the Congressional intent to curb debtors' attempts to frustrate the legitimate rights of creditors to have their rights adjudicated within a reasonable time. However, as stated above, an application of § 109(g)(2) to facts that do not implicate the type of abuse Congress was attempting to cure through enactment of the statute may "fly in the face of Congressional intent." The statute is intended to prevent certain tactics on the debtor's part that could be deemed abusive, *In re Santana*, 110 B.R. at 821, not to prevent altogether an eligible debtor from seeking protection under the Bankruptcy Code.

The Court is persuaded that a mandatory application of § 109(g)(2) to the facts of this case is not indicated by the case law, the legislative history and notions of equity and fairness, and therefore Appellants have met their burden on the likelihood of success requirement. However, the Court is concerned with insuring that Appellee is not left with a depleted piece of property at the conclusion of this litigation.

Therefore, Appellants' Emergency Motion for Stay Pending Appeal (Doc. No. 11) is GRANTED. Appellants are ordered to pay the mortgage payment of $5,000 each month to Appellee plus the value of any land excavated during the pendency of this appeal.

2. Appellants' Motion for Oral Argument (Doc. No. 12, filed April 27, 1992), and Appellee's Response to Motion for Oral Argument (Doc. No. 14, filed May 7, 1992).

Appellants' Motion for Oral Argument (Doc. No. 12) is moot.

DONE AND ORDERED.

### ON MOTION FOR CLARIFICATION

This case came before the Court upon Emergency Motion by Appellee for Relief from Automatic Stay without a Hearing, or Alternatively Request for Emergency Hearing, and Memorandum of Law in Support thereof (Doc. No. 19, filed June 10, 1992); Appellants' Response to Emergency Motion by Appellee for Relief from Automatic Stay with a Hearing or Alternatively Request for Emergency Hearing and Memorandum of Law in Support thereof and Motion for Clarification of Order Dated May 22, 1992 ("Response to Emergency Motion and Motion for Clarification") (Doc. No. 21, filed June 15, 1992) and Appellee's Motion to Strike Appellants' Motion for Clarification of Order Dated May 22, 1992 (Doc. No. 22, filed June 22, 1992). Upon consideration, it is ordered as follows:

1. Appellee's Motion to Strike Appellants' Motion for Clarification (Doc. No. 22) is DENIED.

2. By Order of June 10, 1992 at Docket Entry 20, this Court directed Appellants to show proof of payment to Appellee and to show cause for failure to comply with this Court's Order of May 22, 1992 (Doc. No. 18). Appellants were advised that their failure to show proof of payment and to show cause within five days from the date of the June 10 Order would result in a lifting of the stay pending the bankruptcy appeal previously granted by this Court (Doc. No. 18, filed May 22, 1992).

■ Appellants have responded to the June 10 Order by requesting clarification of the meaning of this Court's Order of

May 22 which ordered Appellants to make monthly mortgage payments of $5,000 to Appellee and in addition to pay to Appellee the value of any land excavated during the pendency of this appeal.

June 22, 1992 marks the passing of one month since entry of the Court's Order of May 22 which granted the stay pending appeal based on the conditions that Appellants make monthly payments of $5,000 plus the value of any land excavated to Appellee. While the Order did not specify a particular date when such payments should be made, the Court was advised at the hearing by both parties that the mortgage payments were $5,000 per month. "Each month" means once a month during the pendency of the appeal. This portion of the Order therefore is not ambiguous. Failure of Appellants to show proof of the mortgage payment to Appellee by June 22, 1992 constitutes noncompliance with the Court's Order of May 22, 1992.

Further, the Court's meaning of "the value of any land excavated during the pendency of this appeal" means gross proceeds derived by Appellants from the sale of excavated land. This meaning was discussed specifically at the May 22 hearing, and argument on the issue was presented by counsel. The Court specified at the hearing that the value of land excavated meant gross proceeds paid for the excavation. Appellee filed an Affidavit of Johnny M. Davis in Support of Emergency Motion for Relief from Automatic Stay (Exhibit C, Doc. No. 19) stating that, based on an inspection and his experience as a design technician for an engineering firm, excavation was being conducted on Appellants' property as of June 4, 1992. Appellants did not refute this in their Response to Emergency Motion and Motion for Clarification (Doc. No. 21) nor did they contend that no value had been received by them for the land excavated since May 22, 1992. Therefore, Appellants' failure to provide Appellee with an accounting of land excavated and payment of the gross proceeds from such excavation by June 22, 1992 constitutes noncompliance with this Court's Order of May 22.

The Court's granting of a stay pending appeal was conditioned upon insuring that Appellee's interest would be made safe from dissipation as a result of continued excavation and nonpayment of the mortgage payments. Appellants have failed to provide the security ordered by this Court on May 22, 1992.

Therefore, Emergency Motion by Appellee for Relief from Automatic Stay without a Hearing (Doc. No. 19), is GRANTED and the stay pending appeal granted by this Court's Order of May 22, 1992 (Doc. No. 18) is TERMINATED.

DONE AND ORDERED.