In re Mary Sue Tickle DUNCAN, Debtor.

**FIRST NATIONAL BANK OF ROCKY MOUNT, Movant,**

v.

**Mary Sue Tickle DUNCAN and George I. Vogel, II, Trustee, Respondents.**

**Bankruptcy No. 7–95–00504.**

United States Bankruptcy Court,
W.D. Virginia,
Roanoke Division.

March 31, 1995.

Howard J. Beck, Jr., Roanoke, VA, for movant First National Bank of Rocky Mount.

Gary M. Bowman, Roanoke, VA, for debtor/respondents.

## DECISION AND ORDER ON MOTION TO DISMISS

ROSS W. KRUMM, Chief Judge.

A hearing was held on the motion of First National Bank of Rocky Mount (herein "the Bank") to dismiss the Chapter 7 case of Mary Sue Tickle Duncan (herein "the Debtor") for the reason that Ms. Duncan is not qualified to be a debtor under Title 11, as defined in 11 U.S.C. § 109(g)(2). The Court has reviewed the parties' pleadings, considered the relevant legal authority, heard the Debtor's testimony and the arguments of counsel.[1] For the reasons stated on the record in open court and in this Decision and Order, the motion of First National Bank of Rocky Mount is denied.

### FACTS

On March 29, 1994, the Debtor filed her first petition under the United States Bankruptcy Code as a Chapter 13 case. On June 6, 1994, the Bank filed a motion seeking relief from the automatic stay to enforce its rights under a note and deed of trust secured by Debtor's residence. On June 16, 1994, the Debtor moved to convert her case from one under Chapter 13 to one under Chapter 7. On June 23, 1994, the Debtor reconsidered, filing another Chapter 13 Plan and a motion to dismiss her motion to convert to Chapter 7. The same day, the Bank filed an amended motion for relief from stay. On June 24, 1994, a hearing was held on the amended motion for relief, and on July 6, 1994, an order was entered denying the motion, but placing certain conditions on the Debtor in order to avoid the lifting of the automatic stay.

On August 10, 1994, a confirmation hearing was held on the Debtor's amended Chapter 13 Plan. At the hearing the Debtor again indicated her intention to convert to Chapter 7. On September 12, 1994, an order was entered converting the case to Chapter 7. On September 28, 1994, the Bank filed a second motion for relief from stay. On October 31, 1994, an agreed order, signed by counsel for the Debtor and by counsel for the Bank, was entered by the Court granting the Bank relief from stay to foreclose on the Debtor's residence. On December 1, 1994, the Debtor filed a motion to dismiss her Chapter 7 case. Her counsel stated in open court and in her pleadings that the Debtor's reason for seeking dismissal was that she needed credit to purchase a car so that she could travel to and from a new job. The seller of the car had agreed to make the sale on credit only on the condition that she end her bankruptcy case. On December 14, 1994, the Court entered an order dismissing the Chapter 7 case.

During early 1995 the Bank proceeded to foreclose on the Debtor's residence. The foreclosure sale was advertised and the Debtor was given proper notice that it would take place on March 8, 1995. On February 28, 1995, the Debtor filed her second petition under Title 11, this time under Chapter 7.

### LAW

The Bankruptcy Code [2] allows a person to be a debtor and gain the protections of Title 11 so long as the person "resides or has a domicile, a place of business, or property in the United States." 11 U.S.C. § 109(a). This broad definition reflects the general Code policy that the honest, but unfortunate, debtor should be allowed to take advantage of the protections offered by federal law. This policy is also evident in the Code's definition of who may be a debtor under Chapter 7. Section 109(b) states that "[a] person may be a debtor under chapter 7 of this title only if such person is not—" a railroad or a domestic or foreign insurance company or bank (of any sort). The definition sweeps every natural person within its

---

1. The Court heard an emergency motion for dismissal by the Bank two days before the foreclosure sale and stayed the Bank pending a full hearing on the merits. A full evidentiary hearing was held in Roanoke, Virginia, on March 15, 1995.

2. In this Decision and Order the U.S. Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, shall be referred to as "the Code."

ambit and excludes only a very narrow group of legal persons.

The Code does carve out exceptions to eligibility for relief. Relevant to this case, 11 U.S.C. § 109(g)(2) states:

Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—(2) the debtor requested and obtained the voluntary dismissal of the case *following the filing of a request for relief from the automatic stay* provided by section 362 of this title.

(emphasis supplied). Section 109(g) contains the only exceptions to eligibility that the Code places on the right of natural persons to file a bankruptcy case.

Judicial interpretations of section 109(g)(2) vary. Some courts take the position that it is jurisdictional in nature and states an absolute rule of eligibility that the bankruptcy court has no discretion to vary. *See, e.g., In re Keziah*, 46 B.R. 551 (Bankr.W.D.N.C. 1985); *Matter of Quiñones*, 73 B.R. 333 (Bankr.D.Puerto Rico 1987); *In re Keul*, 76 B.R. 79 (Bankr.E.D.Pa.1987); *Kuo v. Walton (In re Kuo)*, 167 B.R. 677 (M.D.Fla.1994). This position derives from what these courts describe as the plain and unambiguous language of the statute. In the *Kuo* case, Judge Kovachevich was persuaded that "the lack of ambiguity in the language of section 109(g) ... prevented the court from considering the debtor's motives in having the first case dismissed." *Kuo*, 167 B.R. at 679. *In re Keziah* held that, even though one could interpret "the words 'following the filing' [to] mean[ ] 'in consequence of the filing' or 'as a result of the filing,'" the proper interpretation is that section 109(g)(2) is activated any time a motion for relief from stay is filed earlier in time than a voluntary dismissal is granted. *Keziah*, 46 B.R. at 554–55.

The court in *Keziah* also pointed out that a bankruptcy court might have been granted discretion under section 109(g) to look into the debtor's motivations for moving for a voluntary dismissal had the section been placed somewhere else in the Code, such as in sections 707, 1112, or 1325. According to *Keziah,* however, the section is placed as an eligibility provision and that sets the bounds of the court's jurisdiction. *Id.* at 554.

Other courts have taken the position that section 109(g)(2) leaves the bankruptcy court with discretion to review the facts relevant to a given debtor and make a case-by-case determination as to whether the particular debtor qualifies to maintain a case under Title 11. *See, e.g., Home Savings of America v. Luna (In re Luna)*, 122 B.R. 575 (9th Cir. BAP 1991). This is the view taken by the Ninth Circuit Bankruptcy Appellate Panel when it "decline[d] to follow the line of authority which requires mandatory application of section 109(g)(2)." *Id.* at 577. In *Luna* the Court found that the debtor had acted in good faith, but that the creditor seeking to dismiss the debtor's bankruptcy case had shown bad faith. To dismiss the case, the court held, would create an unjust result. According to the court:

because '[l]egislative enactments should never be construed as establishing statutory schemes that are illogical, unjust, or capricious', we conclude that the bankruptcy court properly declined to apply section 109(g)(2) to Luna's second bankruptcy petition.

*Id.* (citation omitted).

Still other courts have taken the position that section 109(g)(2) only applies to exclude a person from being a debtor under Title 11 when there is a causal relationship between the voluntary motion to dismiss and the motion for relief from stay. *See, e.g., In re Copman*, 161 B.R. 821 (Bankr.E.D.Mo.1993); *In re Santana*, 110 B.R. 819 (Bankr. W.D.Mich.1990); *Matter of Patton*, 49 B.R. 587 (Bankr.M.D.Ga.1985). The court in *Matter of Patton* concluded that:

section 109(f)(2) [3] is intended to address the situation in which the debtor files a bankruptcy case to stay a foreclosure, and when the creditor seeks relief from the automatic stay, the case is then voluntarily dismissed by the debtor. The debtor then

---

3. Section 109(f) became section 109(g) when the 1986 amendments added a new section 109(f)

along with the family farmer provisions in Chapter 12.

refiles prior to the creditor's completing his next attempt to foreclose, and through this scheme, the debtor can continually frustrate the creditor's attempts to foreclose.

49 B.R. at 589. Indeed, Congress' justification for adding section 109(g) to the Bankruptcy Code in 1984 is very similar: "Subsection (f) adds a new paragraph to section 109. The purpose of the new paragraph is to provide the court with greater authority to control abusive multiple filings." S.Rep. No. 65, 98th Cong. 1st Sess. 74 (1983).

The same rationale was adopted by the court in *In re Copman*, 161 B.R. 821. In *Copman* the court noted that section 109(g)(2) was added to the Bankruptcy Code to remedy abusive serial filings. The court also pointed out that the "plain language" interpretation adopted by courts that hold that there is no discretion under section 109(g)(2) may not give due consideration to the natural everyday meaning given to the word "following." *Id.* at 823–24. The court held that the phrase "requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay" implies some relationship between the motion for relief from stay and the voluntary dismissal. According to the court, "by requiring that the debtor both 'request' and 'obtain' the dismissal after the request for relief, the statute requires a causal connection such that the request for relief triggers the dismissal." *Id.* at 823.

■ *Copman*'s reading of the statute most accurately reflects the legislative intent that motivated adding this subsection to the Bankruptcy Code in 1984. Absent a causal relationship, there is no abuse to curb and no purpose to be served by keeping the former debtor out bankruptcy for 180 days.

The analysis in *Copman* is also consistent with the Webster's Dictionary definition of the word "following:"

1. To come or go after ... 5. To be the result of ... 9. To be evident as a consequence of.... *vi.* 1. To come, move, or take place after another person or thing in order or time. 2. To occur or be evident as a consequence: Result.

*Webster's II New Riverside Univ. Dictionary* 493 (1988). Likewise, Roget's thesaurus contains this definition:

... 5. To occur after (another) in time ... *Syns:* follow on, succeed, supervene ... 6. To occur as a consequence ... *Syns:* attend, ensue, result.

*Roget's II: The New Thesaurus* 200 (1980). Finally, Roget's defines "result" thus: "Result: *verb* Follow." *Id.* at 383.

An examination of these standard definitions and synonyms reveals that a natural and common understanding of the word "following" includes a suggestion that there is some causal relationship between the thing coming before and the thing coming after. This interpretation seems the most obvious and natural meaning when one considers that Congress' intent in adding section 109(g) to the Bankruptcy Code was to remedy the abusive practice of serial bankruptcy filings. Moreover, such a practice is only abusive when it is used to forestall a secured creditor from following through on a foreclosure sale. At any other time if a debtor serially files and dismisses bankruptcy cases it would be for reasons other than to thwart creditors.

■ This Court need look no further than to the ordinary definition of the word "following," which the Senate report, published upon the passage of section 109(g)(2), confirms. From this examination it is clear that the proper and natural interpretation of this section is that a person is excluded for 180 days from being a debtor under Title 11 only when the person has voluntarily dismissed a prior bankruptcy case in response to a motion for relief from the automatic stay. Thus, the Court must look to the circumstances surrounding the creditor's motion for relief from stay and the Debtor's motion to dismiss. If this examination reveals that the Debtor was acting in response to the motion for relief from stay, then the Debtor is barred by the terms of section 109(g)(2) from being a debtor under Title 11 for 180 days. If this examination reveals that there was some other reason for the Debtor's motion to dismiss, apart from an effort to thwart a creditor's valid exercise of its rights, then the Court should deny the creditor's motion to dismiss. In all cases, the

Bankruptcy Code and section 109(g)(2) should be applied in a manner that furthers the purposes of the Code and the intent of Congress. As to eligibility, section 109 evidences an intent of broad inclusion and limited exclusion of persons from the protection afforded by the Code. Also, an interpretation that would yield an absurd, illogical, unjust, or capricious result should be avoided. *See, Luna,* 122 B.R. at 577; *Santana,* 110 B.R. at 820–21.

## DISCUSSION

■ The Debtor voluntarily sought, and was granted, the dismissal of her first bankruptcy case after a motion for relief from stay was filed by the Bank. Also, the Debtor consented to the relief requested by the Bank and an agreed order was entered by the Court on October 31, 1994. Fully six (6) months had passed between the Bank's first motion for relief and the dismissal on December 14, 1994. During that time the Debtor prevailed on the merits of the motion for relief on July 6, 1994. In addition, she made an effort to craft a Chapter 13 plan that would allow her to keep her home and pay her creditors. In the Fall of 1994, she recognized the futility of her effort and converted to Chapter 7. Soon after this she voluntarily gave the Bank relief from stay. If the Debtor intended to abuse the system it would have been much easier for her to have dismissed her Chapter 13 [4] and to have waited for the Bank's foreclosure notice before filing another proceeding. But, the record in the motion to dismiss, counsel's arguments at the time, and the evidence adduced at the hearing on the instant motion all indicate that the Debtor sought dismissal for reasons entirely independent of the Bank's motion for relief from stay.

On December 1, 1994, thirty days after entry of the agreed order, and well before the Bank initiated its second foreclosure, the Debtor moved to dismiss her case. The motion stated that the Debtor sought dismissal of her bankruptcy case because she did not own a car, she had recently been offered employment and needed transportation to travel to and from work, and she could only arrange to purchase the car on credit by dismissing her case. When counsel for the Debtor appeared to argue the motion, he represented the same facts on the record in open court. On December 14, 1994, the Court entered an order granting the voluntary dismissal. No other reason for the dismissal was stated at the time or has since been revealed.

The Bank attempts to show that the Debtor filed her second bankruptcy in an effort to again thwart the Bank from pursuing its rights against the Debtor's home. Evidence of timing shows that the Debtor filed the second case on February 28, 1995, knowing that the foreclosure sale had been advertised and scheduled for March 8, 1995. However, these facts do not impact the issue before the Court.

The only time period that is relevant for purposes of section 109(g)(2) is the time surrounding the Bank's motion for relief from stay and the Debtor's voluntary motion to dismiss. The only question is: Was there, during the relevant time period, a causal relationship between the Bank seeking to be relieved of the automatic stay and the Debtor seeking to dismiss her case? On the facts at bar there is no evidence of such a causal relationship. The only evidence that relates to the relevant time period indicates that the Debtor sought to dismiss her case for reasons that were unrelated to the Bank's motion for relief from stay.

## CONCLUSION

For the reasons stated on the record and in this Decision and Order, it is

## ORDERED:

That the motion of First National Bank of Rocky Mount to dismiss case number 7–95–00504 of Mary Sue Tickle Duncan for violation of 11 U.S.C. § 109(g)(2) be, and it hereby is, DENIED.

**4.** Under section 1307(b) of the Code the Debtor has the absolute right to dismiss. In section 707(a), however, notice and a hearing is required before the dismissal can be granted.