In re Wayne E. SOLE and Cynthia L. Sole, Debtors.

Bankruptcy No. 97–28488.

United States Bankruptcy Court,
E.D. Virginia,
Norfolk Division.

May 4, 1998.

Leslie K. Diamond, Norfolk, VA, for Debtors.

George W. Neal, Portsmouth, VA, Standing Chapter 13 Trustee.

## MEMORANDUM OPINION AND ORDER

DAVID H. ADAMS, Bankruptcy Judge.

This matter comes before the Court on the Standing Chapter 13 Trustee's Motion for Dismissal pursuant to Section 109(g)(2) of the Bankruptcy Code.[1]  Having reviewed the pleadings and the competing legal interpretations of Section 109(g)(2), we reach the following factual findings and conclusions of law.  This is a core proceeding and jurisdiction is proper.  28 U.S.C. §§ 157(b)(1), 1334.

### Findings of Fact

The debtors, Wayne E. and Cynthia L. Sole, filed a Chapter 13 petition, case number 95–21014, on February 28, 1995.  In that case, a Motion for Relief from the automatic stay was filed by Chemical Residential Mortgage Corporation in October 1995.  That Motion was later resolved by consent with an Amended Order Granting Modification of the Stay entered on the Court's docket on March 21, 1996.  On November 17, 1997, approximately 20 months after the filing of the motion for relief, this first Chapter 13 petition was dismissed pursuant to the debtors' request for dismissal.  On November 20, 1997, three days following the voluntary dismiss-

---

1.  The Norfolk Division of the Eastern District of Virginia consists of two standing Chapter 13 trustees.  George W. Neal brought this particular Motion to Dismiss.

al of their earlier Chapter 13, the debtors filed their current Chapter 13 petition.

### Conclusions of Law

■ The protections afforded by the Bankruptcy Code are generally available, with few exceptions, to all residents of the United States.[2] One exception carved out by the Code is found in Section 109(g)(2), providing in part

> [N]o individual ... may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—
>
> (2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

11 U.S.C. § 109(g)(2).

Despite its apparent simplicity, Section 109(g)(2) has generated several competing interpretations and has not been addressed by the Fourth Circuit, nor has the matter been clarified by the District or Bankruptcy Courts for the Eastern District of Virginia. Generally, courts interpret Section 109(g)(2) in one of three manners. The first approach considers the equities of the situation, avoiding results that would lead to absurd, inequitable, or unfair results. The second approach is a strict application of Section 109(g)(2) using the plain meaning of the words of the statute. This line of cases asserts that Section 109(g)(2) is triggered anytime a voluntary dismissal follows the filing of a motion for relief. The last approach also applies the plain meaning of the statute, but conditions its application upon a causal connection between a motion for relief from the automatic stay and a debtor's voluntary dismissal of his case.[3]

**2.** *See* 11 U.S.C. § 109(a) (defining who may be a "debtor").

**3.** See generally *In re Richardson,* 217 B.R. 479 (Bankr.M.D.La.1998) for an exhaustive

#### 1. Equitable Approach

We turn our attention first to the § 109(g)(2) approach that balances the equities of each situation. Courts using this approach tend to fall in one of two camps. The first, as evidenced in *In re Luna,* defers to the equities of each situation because a strict application of the statute would lead to an "absurd, inequitable, or unfair result." 122 B.R. 575, 577 (9th Cir. BAP 1992). Other courts relying on concepts of equity cite Congressional intent and apply the statute in only a limited number of cases rather than effectuate the statute across the board. *See, e.g., In re Santana,* 110 B.R. 819 (Bankr.W.D.Mich. 1990).

In *Luna,* a creditor in her first case, Home Savings, requested and obtained relief from the automatic stay in order to sell previously foreclosed property. The debtor then filed a voluntary motion for dismissal and the judge granted her motion. Within 180 days of her voluntary dismissal, the debtor filed a second bankruptcy that should have prevented Home Savings from proceeding with the sale of the previously foreclosed property. Despite its knowledge of the second petition, however, Home Savings sold Luna's property three weeks after the second filing date. The court held that it would adopt a discretionary approach to § 109(g)(2) because to do otherwise "would reward Home Savings for acting in bad faith [by wilfully violating the automatic stay in the second case] and punish Luna for acting in good faith [by seeking to have the bankruptcy court resolve a dispute over possible redemption of the mortgaged property]." *Luna,* 122 B.R. at 577.

In *Santana,* on similar facts, the court concluded that the language of § 109(g)(2) was unambiguous, and that, if applied as written, the statute dictated dismissal. However, the court went on to state that

survey of the various approaches to Section 109(g)(2).

"to apply it literally to the facts now before me would produce, if not an absurd result, then certainly one which goes far beyond the scope of the abuse which it appears Congress was attempting to cure." *Santana*, 110 B.R. at 821. Consequently, the court declined to apply the statute as written, and denied the creditor's motion to dismiss.

Clearly bad facts make for bad law. In both instances, the *Luna* and *Santana* courts reached beyond their judicial roles to achieve a desired result. Neither Section 109(g)(2), while subject to various legitimate interpretations, nor the Bankruptcy Code provide for such extraordinary judicial discretion and interpretation. The *Luna* and *Santana* courts had other means with which to punish creditors for willful violations of the automatic stay. Both courts utilized Section 109(g)(2) to remedy a perceived wrong.

### 2. Strict Approach

The second approach is a strict application of Section 109(g)(2). Courts utilizing this approach hold that the meaning of Section 109(g)(2) is plain and unambiguous, and that the language of the statute dictates a broad rule of dismissal. *See, e.g., In re Andersson*, 209 B.R. 76 (6th Cir. BAP 1997); *In re Keziah*, 46 B.R. 551 (Bankr.W.D.N.C.1985).

The rationale behind a strict interpretation is explained in the *Keziah* decision. There, the court held that even though one could interpret "the words 'following the filing' [to] mean[ ] 'in consequence of the filing' or 'as a result of the filing,'" the proper interpretation is that Section 109(g)(2) is activated any time a motion for relief from stay is filed earlier in time than the granting of a voluntary dismissal. *Keziah*, 46 B.R. at 555. The court added that Congress might have intended bankruptcy courts to look into debtor motivations when moving for a voluntary dismissal had the Section been placed in another part of

the Code, such as sections 1112 or 1325. According to *Keziah*, however, the section is located in the eligibility provisions, setting the bounds of the court's interpretation. *Id.* at 554.

At the outset, we acknowledge that Section 109(g)(2) is written plainly. We note, however, that this strict approach begs the question of statutory ambiguity given the three general interpretations to the statute and their varied permutations. At the very least, the language of the statute is open to interpretation. While this strict approach does not vary from the letter of the statute, we disagree with the *Keziah* court to the extent that it does not read the words "following the filing" as necessitating some casual connection between the filing of a motion for relief and the subsequent voluntary dismissal of a debtor's case. Thus, as is the case with the equitable approach, we cannot agree with this particular interpretation and look elsewhere for construction of Section 109(g)(2).

### 3. Causal Approach

The last approach to Section 109(g)(2) looks for a causal relationship between the voluntary motion to dismiss and the motion for relief from stay. *See First Nat'l. Bank. of Rocky Mount v. Duncan (In re Duncan)*, 182 B.R. 156 (Bankr.W.D.Va.1995); *In re Patton*, 49 B.R. 587 (Bankr.M.D.Ga.1985). The court in *Patton* concluded that:

> [S]ection 109(f)(2)[4] is intended to address the situation in which the debtor files a bankruptcy case to stay a foreclosure, and when the creditor seeks relief from the automatic stay, the case is then voluntarily dismissed by the debtor. The debtor then refiles prior to the creditor's completing his next attempt to foreclose, and through this scheme, the debtor can continually frustrate the creditor's attempts to foreclose.

4. Section 109(f) became section 109(g) after the 1986 amendments added a new section.

49 B.R. at 589. Congress' justification for adding Section 109(g) to the Bankruptcy Code in 1984 is similar to the *Patton* court's analysis: "Subsection (f) adds a new paragraph to section 109. The purpose of the new paragraph is to provide the court with greater authority to control abusive multiple filings." S.Rep. No. 65, 98th Cong. 1st Sess. 74 (1983).

A similar rationale was adopted by Chief Judge Krumm in the *Duncan* matter. The court noted that by requiring that the debtor both "request" and "obtain" the dismissal after the request for relief, the statute requires a causal connection such that the request for relief triggers the dismissal. 182 B.R. at 159. "Absent a causal relationship, there is no abuse to curb and no purpose to be served by keeping the former debtor out [of] bankruptcy for 180 days." *Id.* The court concluded that the proper approach to Section 109(g)(2) is to examine the circumstances surrounding a creditor's motion for relief from stay and a debtor's subsequent motion to dismiss. If the examination reveals that the debtor was acting in response to the motion for relief from stay, then the debtor is barred by the terms of Section 109(g)(2) from being a debtor under Title 11 for 180 days. If, on the other hand, the examination reveals some other reason for the debtor's motion to dismiss, apart from an effort to thwart a creditor's valid exercise of its rights, then the Court should deny the creditor's motion to dismiss. *Id.*

We are convinced that this latter interpretation of Section 109(g)(2), rather than a strict interpretation, reflects both Congressional intent and the most natural and obvious reading of the statute. Indeed, the present case exemplifies the undesired result of a strict interpretation. Here, a creditor filed a motion for relief in October 1995 that was later resolved by consent with an Amended Order Granting Modification of the Stay entered on the Court's docket on March 21, 1996. Twenty months after the filing of the motion for relief, the debtors requested and received a voluntary dismissal of their case on November 17, 1997. Then, on November 20, 1997, three days after their dismissal, the debtors filed this second case that is the subject of the Trustee's Motion to Dismiss.

A strict interpretation of Section 109(g)(2) would have these debtors' case dismissed. In fact, *any time* a motion for relief is filed and then followed by a voluntary dismissal of a case, a strict interpretation of the statute would bar that debtor from refiling for 180 days regardless of the circumstances. That result goes beyond the fix intended by Congress and goes beyond even the simplest of logic. In the case at bar, there is no causal connection between the agreed relief from stay and the much later voluntary dismissal of the debtors' first case.

Thus, on a motion to dismiss based upon Section 109(g)(2) we will look for a causal connection between a motion for relief from the automatic stay and a debtor's subsequent request and receipt of a voluntary dismissal. Absent the causal connection, section 109(g)(2) is not triggered and a debtor is not barred from refiling for 180 days.

Here, the Trustee failed to demonstrate any causal connection between Chemical Residential Mortgage's Motion for Relief and the debtors' subsequent voluntary dismissal. For those reasons, the Trustee's Motion to Dismiss pursuant to Section 109(g)(2) is denied.

It is so ORDERED.