**In re Betty KEZIAH, SS# 238–42–7844, Debtor.**

**Bankruptcy No. C–B–84–0687.**

United States Bankruptcy Court,
W.D. North Carolina,
Charlotte Division.

Feb. 7, 1985.

David R. Badger, Charlotte, N.C., for debtor.

Richard H. Tomberlin, Charlotte, N.C., for movant.

## ORDER

MARVIN R. WOOTEN, Bankruptcy Judge.

THIS MATTER coming on to be heard upon Jim Walter Homes, Inc./Mid-State Homes, Inc.'s objection to confirmation of the alleged Debtor's Chapter 13 plan, and being heard by the Court, the undersigned Judge presiding, on January 7, 1985 and again on February 4, 1985, the Court does hereby find the following issues to be presented in the controversy before it:

## ISSUES

I. Is 11 U.S.C. 109(f)(2) applicable only in bankruptcy proceedings wherein both the voluntary dismissal of the prior case and the new filing occur after the section's effective date; or does the section apply to all filings made after that date, irrespective of when the voluntary dismissal was taken?

II. If 11 U.S.C. § 109(f)(2) applies to all filings after its effective date, does this fact make the section unconstitutional as being a retrospective law or as being a denial of equal protection?

III. Is § 109(f)(2) limited to situations where the voluntary dismissal of the prior petition was intended to frustrate a secured creditor's request for relief from stay; or does it apply in all such attempted refilings irrespective of intent and any frustration to the creditor?

AND THE COURT after hearing the evidence presented, the able arguments of counsel, and upon careful consideration of the record does hereby find the following to be the facts of this controversy and makes the following conclusions of law:

## STATEMENT OF FACTS

The underlying facts are not in dispute. Betty and James Keziah filed a Petition with this Court under Chapter 13 of the Bankruptcy Code on May 13, 1981. A plan was confirmed in the case. On May 1, 1984, Jim Walter Homes, Inc./Mid-State Homes, Inc., (hereafter "JWH" and "Mid-State"), a secured creditor, requested relief from stay based upon post-petition default. Betty Keziah, who was then and is now separated from her husband, filed notice of dismissal of her case on September 26, 1984. The alleged Debtor contends this voluntary dismissal was elected in order to give her a longer time to cure arrearages owed Mid-State and for other reasons apart from the relief from stay motion.

The present bankruptcy was filed by the alleged Debtor, Betty Keziah, on November 14, 1984, and again a plan was proposed. Jim Walter Homes, Inc./Mid-State has objected to confirmation of this plan citing § 109(f)(2). The gravamen of the objection is that § 109(f)(2) prohibits an individual who has taken a voluntary dismissal of a bankruptcy following a request for relief from stay from being a debtor for 180 days thereafter.

This objection was first heard in this Court on January 7, 1985. The Court thereafter ordered a second hearing to entertain further argument by counsel for the parties. The rehearing was held on February 4, 1985.

## CONCLUSIONS OF LAW

11 U.S.C. § 109(f)(2) provides as follows: "Notwithstanding any other provision of this section, no individual may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—

. . . . .

(2) following a filed request for relief from stay the debtor has taken a voluntary dismissal of that preceding case."

§ 109 was a part of the Bankruptcy Amendments and Federal Judgeship Act of 1984 (BAFJA) which was enacted July 10, 1984. The section became effective on October 8, 1984.

### I.

Jim Walter Homes, Inc./Mid-State argues that since the alleged Debtor voluntarily dismissed the prior proceeding on September 26, 1984, she was unable to refile on November 14, 1984; the refiling occurring within the 180 day period. Keziah denies any impediment to refiling, first arguing that § 109(f)(2) must be construed to apply only to cases wherein both the voluntary dismissal of the first bankruptcy and the attempted refiling occur *after* the § 109(f)(2) effective date. Any other reading, she asserts, would give the statute retrospective effect, making it unconstitutional under the Due Process Clause of the 14th Amendment. The alleged Debtor also implicitly asserts that the statute would violate the 5th Amendment under such a reading. In support of her arguments, she cites *United States v. Security Industrial Bank, et al.*, 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235, 7 CBC 2d 629 (1982).

*Security Industrial Bank* was a consolidated appeal by lien creditors and debtors to several Bankruptcy Judges' Orders avoiding (or not avoiding) these interests under

§ 522(f)(2). In these cases, the lienholders had obtained their interests in Debtors' property prior to the enactment date of the Bankruptcy Reform Act of which § 522(f)(2) was a part. The Bankruptcy petitions and lien avoidances post-dated the Act's effective date.

In affirming the Tenth Circuit's decision that these prior lienholds were not avoidable, the U.S. Supreme Court ruled that Congress could not take for a debtor's benefit rights in specific property acquired by a creditor prior to the Reform Act. To so do would be a clear violation of the 5th Amendment prohibition against the taking of private property without compensation.

■ *Security Industrial Bank* is not controlling in the present case. Unlike lienhold interests, the opportunity to file Bankruptcy is not a property right guaranteed by the Constitution. The Supreme Court has ruled, "There is no constitutional right to obtain a discharge of one's debts in Bankruptcy." *U.S. v. Kras*, 409 U.S. 434, 446, 93 S.Ct. 631, 638, 34 L.Ed.2d 626 (1972). Rather Article I, § 8, cl. 4 of the Constitution simply gives Congress the power to "establish ... uniform Laws on the subject of Bankruptcies throughout the United States." Id.

*Kras* involved the contentions of a petitioner who had sought in forma pauperis status and a waiver of the filing fee required in the Bankruptcy Act. Upon denial of his filing, the Petitioner challenged the decision on 5th Amendment and equal protection grounds. As noted above, the Supreme Court was not moved by Kras' 5th Amendment assertions. Moreover, it rejected Kras' equal protection claim, stating:

"The filing fee does not deny Kras the equal protection of the laws. Bankruptcy is hardly akin to free speech or marriage or to those other rights, so many of which are imbedded in the First Amendment, that the Court has come to regard as fundamental and that demand the lofty requirement of a compelling governmental interest before they may be significantly regulated. Neither does it touch upon what have been said to be the

suspect criteria of race, nationality, or alienage. Instead, bankruptcy legislation is in the area of economics and social welfare. This being so, the applicable standard, in measuring the propriety of Congress' classification, is that of rational justification." Id.

Like *Kras*, the question before the Court today concerns eligibility to be a debtor in Bankruptcy. As such, it is not a property right protected by the 5th Amendment.

■ Moreover, this is not a right absolutely protected by the Constitution on equal protection grounds. When Congress enacted § 109(f)(2) in a bill signed and becoming effective on July 10, 1984, it made specific provision that the effective date of this Code Section be extended for a period of 90 days, giving all Debtors a notice thereof. At the same time, the provision comes into play only by voluntary action of the Debtor. Inasmuch as the statute is not mandatory but comes into effect only by a Debtor's election through the taking of a voluntary dismissal; and for the reason that § 109(f)(2) has universal application to all such debtors on its effective date, the Court concludes it does not deny an individual equal protection of the law.

■ The alleged Debtor has also argued that § 109(f)(2) is a retrospective law, insofar as it would preclude a former Debtor who has taken a voluntary dismissal, pre-BAFJA from refiling for 180 days. (Assuming the refiling was sought after October 8, 1984). The Court disagrees. § 109(f)(2) sets out criteria which must be met *before* one is eligible to be a Debtor in Bankruptcy post-October 8, 1984. As such, its effect is prospective and not retroactive. In any case, the fact situation hypothesized is not here presented (and cannot be presented since the 180 days have now passed.) Rather, in this matter, the voluntary dismissal occurred *after* § 109(f) was signed into law. The alleged Debtor received full notice of the consequences of her actions before the dismissal was taken. As such there was no retrospective, detrimental effect on the alleged Debtor's rights.

## II.

■ Keziah alternatively argues that § 109(f) is inapplicable in her case because her dismissal was motivated by reasons other than Jim Walter Homes, Inc./Mid-State's request for relief from stay. In short, she asserts that the Bankruptcy Courts should conduct a good faith test in § 109(f)(2) matters and should apply the section only where the filing was abusive. We cannot agree. § 109(f)(2) is unambiguous on its face and doesn't bear reading this language into it. The section clearly states "no individual" can be a debtor who has been a debtor if within the preceding 180 days that individual requested a voluntary dismissal of a first case following the filing of a request for relief from stay. The command is clear and there is no provision authorizing the Bankruptcy Judge to use his judgment to determine whether the statute should apply.

Had Congress intended to grant the Bankruptcy Judges discretion in such matters, one would imagine it would have placed the 180 day rule in a Code section other than § 109. For example, § 109(f) could have been made a part of § 707, § 1112, or § 1325 thereby giving the Courts the opportunity to exercise discretion in the application of its provisions. However, § 109 is a part of the eligibility (to be a debtor) section which involves the subject matter jurisdiction of this Court. The 180-day rule having been placed there, the Court has no choice but to apply it; for indeed, it lacks the power to do otherwise.

Obviously § 109(f)(2) presents problems. And the Court would question, but not answer what the result would be under this statute if the request for relief from stay which makes § 109(f)(2) applicable was filed and then withdrawn, denied, or granted and foreclosure completed, prior to a voluntary dismissal and subsequent refiling? Are both the former Debtor and his Creditors still so barred from refiling?

In considering the wording of § 109(f)(2) a number of writers have concluded that

the provision was adopted to prevent "abusive filings"; some have said that the words "following the filing" means "in consequence of the filing" or "as a result of the filing"; and still others have determined that it was the intent of Congress that the provisions are applicable only where the debtors actions "intentionally" or "in fact, frustrate" a previous filing of a request from the automatic stay. Albeit that all of the above conclusions are reasonable, our study discloses no legislative history justifying any of them. In each instance, absent legislative history, policy determinations are involved which are beyond the scope of this Courts authority. For it is Congress and not this Court which has the responsibility and authority to determine on a rational basis who may and may not be a Debtor. And Congress has made a rational and universal determination thereof in a section which negates discretion and prevents the individual from being a Debtor under any Chapter voluntarily or involuntarily; such section affecting the rights of that individual and of his creditors as well.

Moreover, given this clear and unambiguous statement of the law as to who may be a debtor, to do other than to follow the letter of the statute would likely perpetrate an injustice on this Debtor. For if the Court were to confirm this plan, Keziah might make plan payments for years, only to be decreed ineligible and without the ability to receive a discharge and the benefits thereto at the plan's end.

In light of this clear and unambiguous statutory provision and in consideration of the harm which might be occasioned by an expansive interpretation of the same, this Court must conclude that Betty Keziah was ineligible to be a debtor on November 14, 1984 and rule accordingly.

THEREFORE, IT IS ORDERED, ADJUDGED and DECREED as follows:

1. That confirmation of the alleged Debtor's plan be and it is hereby denied for the reason that Betty Keziah was ineligible to be a Debtor under the Bankruptcy Code on the petition date; and

2. That the alleged Debtor's petition should be and it is hereby striken from the record.