United States Court of Appeals,

Fifth Circuit.

No. 93-3720

Summary Calendar.

In the Matter of Jo Ann ULMER, Debtor.

Michael J. MORAN, Appellant,

v.

Dan C. FRISARD, Appellee.

April 22, 1994.

Appeal from the United States District Court for the Eastern District of Louisiana.

Before KING, HIGGINBOTHAM, and BARKSDALE, Circuit Judges.

PER CURIAM:

A bankruptcy court judge imposed sanctions pursuant to Federal Rule of Civil Procedure 11 on Michael J. Moran, attorney for Jo Ann Ulmer, for filing for relief under Chapter 7 of the Bankruptcy Code in violation of 11 U.S.C. § 109(g)(2). Moran appealed to federal district court, which affirmed. Moran again appeals. We affirm.

I.

The debtor, Jo Ann Ulmer, filed for relief under Chapter 13 of the Bankruptcy Code. She thereby triggered an automatic stay, barring Dr. Dan C. Frisard, a creditor of Ulmer, from collecting money owed him.[1] Frisard subsequently filed a motion seeking relief from the stay. The bankruptcy court deferred addressing Frisard's motion until it resolved another issue, an objection to Ulmer's claimed homestead exemption. After the bankruptcy court resolved the issue of the homestead exemption and before the court ruled on the relief Frisard requested, on December 15, 1989 Ulmer voluntarily dismissed her case under Chapter 13.

Frisard subsequently took various legal actions to secure the money Ulmer owed him. Michael J. Moran, who represented Ulmer, filed a petition on February 9, 1980 for relief under

---

[1]See 11 U.S.C. § 362(a).

Chapter 7 of the Bankruptcy Code in part, as he acknowledges on appeal, to stave of Frisard's attempts at collection.

Frisard responded with a motion for relief from the stay, which the bankruptcy court granted. Ulmer moved to have the stay partially reinstated. Frisard then filed a motion for dismissal of Ulmer's case with prejudice alleging a violation of 11 U.S.C. § 109(g)(2).

Section 109(g)(2) prohibits a debtor from seeking relief under Title 11 a second time within 180 days of an earlier bankruptcy case if the debtor "requested and obtained the voluntary dismissal of the [earlier] case following the filing of a request for relief from the automatic stay provided" by the Bankruptcy Code.[2] Congress enacted section 109(g)(2) to prevent debtors from frustrating creditors' efforts to recover funds owed them.[3] The section denies a debtor the opportunity to invoke repeatedly the automatic stay of Title 11. Without the section, a debtor could move in and out of bankruptcy, forcing a creditor to pursue time and again the right to collect a debt.[4]

Ulmer filed for relief under Chapter 7 within 180 days of her voluntary dismissal of her case under Chapter 13. The bankruptcy court therefore dismissed the case with prejudice.

Arguing that Ulmer's attempt to seek relief under Chapter 7 constituted a clear violation of the Bankruptcy Code, Frisard seeks sanctions under Federal Rule of Civil Procedure 11.[5] He wishes to recover the money he expended in attorney's fees and costs as a result of Ulmer's second effort to secure relief under the Bankruptcy Code. The bankruptcy court sanctioned Moran, Ulmer's attorney, for filing the second petition. The district court affirmed. Moran appeals.

## II.

We review the imposition of sanctions under Federal Rule of Civil Procedure 11 for abuse of

---

[2]11 U.S.C. § 109(g)(2).

[3]*See* Harry Wright, *Must Courts Apply Section 109(g)(2) When Debtors Intend No Abuse in an Earlier Dismissal of Their Case?,* 7 Bank.Dev.J. 103, 106-07 (1990).

[4]*See* Wright, supra note 3, at 103-05.

[5]*See* Bankruptcy Rule 9011 and 28 U.S.C. § 1927.

discretion.[6]

Moran argues on appeal that section 109(g)(2) did not prohibit Ulmer from seeking protection under Title 11 a second time and, if it did, that the law was not sufficiently clear to warrant sanctions. Sanctions are appropriate if the position a lawyer adopts is "unreasonable from the point of view both of existing law and of its possible extension, modification, or reversal."[7]

Section 109(g)(2) appears on its face to proscribe Ulmer's second filing for bankruptcy. The statute provides that "no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if ... the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided" by Title 11.[8] Ulmer sought protection under Title 11. Frisard requested relief from the automatic stay provided by Title 11. Ulmer then voluntarily dismissed her case under Title 11. Ulmer, acting through Moran as her attorney, filed again for relief before 180 days had elapsed. The impropriety of this act is obvious. Moran's arguments to the contrary are unpersuasive.

### A.

Moran claims that Frisard's motion for relief from the stay was no longer before the court when Ulmer voluntarily dismissed the case. Moran bases this claim on his observations that the bankruptcy court did not act on Frisard's request for relief, and that Frisard did not urge the court to pursue the request, within the time frame that Moran alleges the Bankruptcy Code required. Moran infers that Frisard withdrew his request for relief.

In the alternative, Moran argues that the bankruptcy court ruled against Frisard on his request for relief. When Frisard first requested relief, the court postponed addressing the issue until it resolved a question involving Ulmer's claimed homestead exemption. Moran interprets this delay as

---

[6]*Elliott v. The M/V Lois B,* 980 F.2d 1001, 1007 (5th Cir.1993).

[7]*CJC Holdings, Inc. v. Wright & Lato, Inc.,* 989 F.2d 791, 793 (5th Cir.1993) (quoting *Smith International, Inc. v. Texas Commerce Bank,* 844 F.2d 1193, 1200 (5th Cir.1988)) (internal quotation marks omitted).

[8]11 U.S.C. § 109(g)(2).

a denial of Frisard's request.

Underlying both of these claims is the premise that had Frisard withdrawn the request for relief or the court denied that request, then Ulmer would have been free to petition for bankruptcy within the 180 day period. We need not address the validity of this premise,[9] because the request was still pending before the bankruptcy court when Ulmer voluntarily requested a withdrawal of the case.

Moran's arguments to the contrary lack merit. Perhaps Frisard could have successfully urged the court to address his motion more quickly. His failure to do so and the court's failure, if any, to act promptly provide no basis, however, to conclude that Frisard no longer wished to recover the money Ulmer owed him or that the court would not allow Frisard to recover the money. In any case, Frisard did not withdraw his motion to lift the stay and the court did not rule on the motion. When Ulmer voluntarily dismissed her case, Frisard could not pursue the motion. When she sought relief under Chapter 13, he had to begin again his efforts to recover the money owed him. Section 109(g)(2) bars a debtor from thwarting a creditor's efforts in this way.

B.

Moran next argues that implicit in section 109(g)(2) is the qualification that the rule does not apply to debtors who act in good faith. Although the section seems to establish a clear rule, Moran contends that it should only apply where a debtor abuses the protection afforded by the Bankruptcy Code.

Moran correctly notes that two lines of cases have developed interpreting section 109(g)(2). One line rejects the notion that courts should look to the spirit rather than the letter of the section. These cases require a court to apply section 109(g)(2) strictly regardless of the reasons for a debtor's

---

[9]This interpretation finds support both in the language and the purpose of section 109(g)(2). The section bars a party from becoming a debtor under Title 11 within 180 days of a request for voluntary dismissal "following the filing of a request for relief from [an] automatic stay." If the request for relief from the automatic stay is no longer before the court, one can reasonably conclude the request for voluntary dismissal did not follow the former request but rather occurred independently. This construction would limit section 109(g)(2) to situations where the debtor might have acted to avoid the court ruling on the creditor's request for relief. *See, e.g., Fulton Fed'l Sav. & Loan v. Milton (In re Milton),* 82 B.R. 637, 640 (Bankr.S.D.Ga.1988); *In re Patton,* 49 B.R. 587, 589 (Bankr.M.D.Ga.1985).

actions.[10]  A second line of cases, on which Moran relies, acknowledges a good faith exception.  The latter line of cases does not, however, support Moran's position.

The decision of the United States Bankruptcy Appellate Panel of the Ninth Circuit in *In re Luna,*[11] is representative.  The debtor in *In re Luna* filed for protection under Chapter 13 of the bankruptcy code.  A creditor then filed for relief from the automatic stay, which the debtor's action had triggered.  The court granted the creditor's requested relief, provided that the creditor met certain conditions in pursuing the money owed.  When the creditor did not abide by these conditions, the debtor once again filed for protection under Chapter 13.  The creditor moved to dismiss the second petition under section 109(g)(2).[12]  The court noted that applying 109(g)(2) under these circumstances would "reward [the creditor] for acting in bad faith and punish [the debtor] for acting in good faith."[13]  The court refused to dismiss the debtor's case.[14]  Moran's actions are not analogous to *In re Luna* or to the other cases reading an exception into section 109(g)(2).[15]

The bankruptcy court found that, even if an exception to section 109(g)(2) protects a debtor who violates its terms but acts in good faith, the exception would not extend to Moran's litigation strategy.  Moran offered no evidence that he filed for bankruptcy under Chapter 7 for a purpose other

---

[10]*See, e.g., In re Bigalk,* 813 F.2d 189, 190 (8th Cir.1987);  *In re Denson,* 56 B.R. 543, 545-46 (Bankr.N.D.Ala.1986);  *Smith v. First Fed. Sav. & Loan Ass'n (In re Smith),* 58 B.R. 603, 604-05 (W.D.Pa.1986);  *In re Keziah,* 46 B.R. 551, 554 (Bankr.W.D.N.C.1985).  *See also* Wright, supra note 3, at 119-20 (arguing that section 109(g)(2) is best interpreted strictly).

[11]122 B.R. 575 (Bankr. 9th Cir.1991).

[12]*Id.* at 576.

[13]*Id.*

[14]*Id.*

[15]*See In re Santana,* 110 B.R. 819, 821-22 (Bankr.W.D.Mich.1990) (holding that party that had not sought relief from stay prior to voluntary withdrawal could not invoke § 109(g)(2) to prohibit second filing within 180 days); *Economy Motors Inc. v. Jones (In re Jones),* 99 B.R. 412, 413 (Bankr.E.D.Ark.1989) (holding that § 109(g)(2) does not apply if stay was not contested when debtor made voluntary request to withdraw case); *In re Milton,* 82 B.R. at 639-40 (holding that § 109(g)(2) does not apply where debtor has reached good faith settlement with creditor over request for relief from stay prior to debtor's voluntary request for withdrawal); *In re Patton,* 49 B.R. at 589 (holding that § 109(g)(2) does not apply where creditor received full relief prior to debtor's voluntary request for withdrawal).

than delaying Frisard's recovery of the money owed him. Indeed, Moran acknowledges that Frisard's aggressive efforts to recover from Ulmer, and in particular Frisard's attempt to garnish Ulmer's wages, prompted Moran to file a petition for relief under Chapter 7 on Ulmer's behalf. Moran took this step to ward off Frisard. In other words, Moran had Ulmer act in the very manner that Congress proscribed through section 109(g)(2). No interpretation of section 109(g)(2) can provide a satisfactory justification for this action, nor could any plausible interpretation have led Moran to believe that a court would approve his conduct.

## C.

Moran also argues that the bankruptcy court adopted the wrong standard in imposing sanctions. The bankruptcy court noted that Moran provided no evidence that he had a motive other than delay when Moran filed a petition under Chapter 7 on Ulmer's behalf. Moran contends, however, that the burden lay on Frisard, as the movant, to prove that Moran intended to delay Frisard's efforts. This argument confuses the legal issues before the court.

The bankruptcy court found, among other things, that Moran had not performed a reasonable inquiry into the law such that his request on Ulmer's behalf under Chapter 7 embodied existing legal principles or a good faith argument for the extension, modification, or reversal of existing law. The failure to perform such a legal inquiry provides a basis for liability under Rule 11 independent from any claim that Moran's intent was to delay legal proceedings.[16] Moran's intentions are relevant only because Moran claims that there is a good faith exception to Section 109(g)(2). The bankruptcy court was addressing the requirements of section 109(g)(2), not of Rule 11, when it noted that Moran provided no rationale for the second filing other than to hinder Frisard's efforts to recover funds owed him. In the context of section 109(g)(2), the bankruptcy court's observation was appropriate.

## D.

The district court's review of the bankruptcy court's decision gives rise to a final issue. Moran claims that the district court applied the wrong standard on appeal. The district court affirmed the bankruptcy court but, in doing so, hesitated to criticize Moran's actions. Moran confuses the delicacy

---

[16]*See Thomas v. Capital Security Services, Inc.,* 836 F.2d 866, 874 (5th Cir.1988).

of the district court for a misunderstanding of the law. The district court in essence adopted the position of the bankruptcy court. We find that the bankruptcy court's decision to impose a sanction under Rule 11 was appropriate.

AFFIRMED.