In re Joseph **JARBOE**, Debtor.

**Bankruptcy No. 92–4–3162–PM.**

United States Bankruptcy Court, D. Maryland.

Jan. 19, 1995.

Ronald Drescher, Baltimore, MD, for debtor.

David W. Draper, Bethesda, MD, for Berkeley Federal Bank & Trust, F.S.B.

## MEMORANDUM OF DECISION

PAUL MANNES, Chief Judge.

### History of Case

Debtor filed a bankruptcy case under Chapter 13 on May 27, 1992. He owned investment property located in Fairfax County, Virginia, said to be worth over $300,000 subject to a lien securing a $100,000 obligation to Independence One Financial Services, and a 1990 Ford Taurus wagon subject to a lien securing Fort Motor Credit. Both secured loans were said to be current. Debtor's schedules also reflected $8,269.60 in unsecured priority claims and $54,189 in unsecured nonpriority claims.

Debtor's plan filed May 27, 1992, proposed a payment of $1,300 a month to the Chapter 13 trustee for a period of 60 months, with the proceeds dedicated, after payment of the trustee's statutory commission, to payment in full of the holders of unsecured priority claims with interest, and then pro rata to holders of unsecured nonpriority claims until paid in full. Because no defaults existed as to the holders of secured claims, the plan provided for "[r]outine payments to be made: Outside of Plan" that is, that the debtor would continue to make these payments directly to the creditors when due without the trustee's involvement. Following the confirmation hearing held pursuant to 11 U.S.C. § 1324 on July 30, 1992, the debtor's plan was confirmed.

After confirmation the Chapter 13 trustee filed a claim on behalf of the Internal Revenue Service pursuant to Bankruptcy Rule 3004. *Cf. In re Davis,* 936 F.2d 771 (CA.4 1991). The Chapter 13 trustee's objections were sustained as to two untimely filed claims of Chevy Chase Bank aggregating $5,692.13. The trustee's notice of claims showed an aggregate of $48,447.16 in allowed unsecured priority and nonpriority claims. Because some creditors failed to file timely claims, debtor could have completed payments under his plan a year and a half ahead of original projections.

On September 2, 1994, Berkeley Federal Bank & Trust, F.S.B. ("Berkeley"), filed a motion for relief from stay. Berkeley was described as the holder of the claim secured by the lien on debtor's investment property. Berkeley sought leave to proceed under state law on account of debtor's alleged failure to make payment of $1,501.76 due for the months of June, 1994, through August, 1994. Prior to the hearing set September 26, 1994, Berkeley's motion was withdrawn.

On October 5, 1994, the trustee filed a notice of debtor's change of address to Rogers, Arkansas.

Debtor substituted counsel on October 24, 1994, and that same day new counsel, on behalf of debtor, exercised his absolute right to dismiss the case under 11 U.S.C. § 1307(a). *In re Nash,* 765 F.2d 1410, 1413–14 (CA.9 1985); Epstein, Nickles and White, *Bankruptcy,* Vol. I, § 2–13(b) (1992). The case was dismissed by order of court entered November 8, 1994. The form order bore the Clerk's notation:

" _X_ Check if § 109(g) is applicable.

_/s/ Patty Rutledge"_
Deputy Clerk

11 U.S.C. § 109(g)(2) provides:

**§ 109. Who may be a debtor.**

(g) Notwithstanding any other provisions of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—

\* \* \* \* \* \*

(2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

### Debtor's Motion

On November 15, 1994, debtor filed a motion entitled "Motion to Amend Order Dismissing Case." Debtor seeks a ruling of the court countermanding the effect of § 109(g)(2). Debtor's motion states in part:

3. On September 2, 1994, Berkeley Federal filed a Motion For Relief From The Automatic Stay (the "Prior Motion"), attempting to lift the stay of § 352(a) in order to foreclose on the Property. The grounds for the Prior Motion were that the Debtor had allegedly failed to make certain post-petition payments to Berkeley Federal under the Loan. However, correspondence sent from the Debtor's predecessor counsel to counsel for Berkeley Federal demonstrates that the Debtor had timely made *all* required payments to Independence One, which eventually forwarded the payments to Berkeley Federal. True and accurate copies of a letter setting forth the true facts, dated September 12, 1994, and September 15, 1994, are attached hereto collectively as Exhibit "A" and are incorporated herein by reference.

4. Berkeley Federal, upon discovering that it had filed the Prior Motion in error and that there was in fact no default under the Loan or any other grounds for relief from stay, promptly filed a Line withdrawing the Prior Motion. A true and accurate copy of the said Line, filed with this Court on or about September 21, 1994, is attached hereto as Exhibit "B" and is incorporated herein by reference. Other than the prior Motion erroneously filed by Berkeley Federal, the docket indicates that no other motions for relief from the automatic stay were filed in this case.

5. Indeed, this Chapter 13 case has proven to be a great success. Through September 25, 1994, the Debtor had made all of his plan payments to the Chapter 13 Trustee, totaling Thirty–Five Thousand One Hundred Dollars ($35,100.00), thereby paying off the priority taxing authorities and substantially reducing the claims of unsecured creditors. Furthermore, the Debtor has remained current in all his monthly obligations to secured creditors. A true and accurate copy of the Trustee's Periodic Report to Debtor dated September 25, 1994, the last such report submitted by the Trustee, is attached hereto as Exhibit "C" and is incorporated herein by reference.

6. On October 24, 1994, the Debtor submitted to this Court a request to dismiss this Chapter 13 case. At that time, there was no motion for relief from stay pending. However, on November 8, 1994, this Court entered an order (the "Dismissal order") dismissing this case with prejudice and prohibiting the Debtor from re-filing a petition under title 11, U.S.C. until May, 1994 [sic].

7. This prohibition was in error. As further set forth in the Memorandum in support of this motion filed concurrently herewith, the legal authorities relevant to this issue do not prohibit the re-filing of another voluntary petition within one hundred eighty (180) days after dismissal where there is no contested matter for relief from stay pending and where the only motion for relief from stay filed in the case had been erroneously filed. At this time, the Debtor is negotiating a workout with Berkeley Federal. In the event that the workout is not successful, the Debtor wishes to preserve his right to re-file a petition under either Chapter 13 or Chapter 11 in order to retain the Property, which is essential to his successful reorganization.

### Issue Presented

Does § 109(g)(2) [1] apply to a case when the request for relief from the automatic stay that would otherwise bar refiling was not pending at the time of the request for dismissal and was filed under a misapprehension of the facts of the case?

---

1. This court has previously visited § 109(g)(2) in *In re Hicks*, 138 B.R. 505 (Bankr.Md.1992) (Derby, J.), and *In re Holder*, 151 B.R. 725 (Bankr. Md.1993) (Derby, J.). In *Hicks*, Judge Derby pointed out that § 109(g)(2) did not operate as a bar where debtor requested dismissal before the motion for relief from stay was filed. *Holder* dealt with the application of § 109(g)(2) when the debtor failed to prosecute her case under Chapter 13.

## Discussion

The court has no reason to question debtor's good faith in dismissing the bankruptcy case or in filing this motion. However, the court is without authority to grant the relief requested and will deny the motion.

It is uncontradicted that the debtor requested and obtained dismissal of the case following the filing of Berkeley's motion. The statute read literally permits no other decision than denial of the instant motion. At this point in the decision, it is customary for courts to indulge in the obligatory treatise on plain meaning. This is particularly so in bankruptcy cases and has been so since the earliest days of the Republic. In the case of *United States v. Fisher, et al., assignees of Blight, a bankrupt*, 6 U.S. (2 Cranch) 358, 2 L.Ed. 304 (1805), the questions submitted were:

1. Whether an attachment laid by the United States, on property of the bankrupt in the hands of the collector of Newport in Rhode Island, after the commission of bankruptcy had issued, is available against the assignees?

2. Whether the United States are entitled to be first paid and satisfied, in preference to the private creditors, a debt due to the United States by Peter Blight, as indorser of a foreign bill of exchange, out of the estate of the bankrupt in the hands of his assignees?

Speaking for the Court, Chief Justice Marshall stated:

The question in this case is, whether the United States, as holders of a protested bill of exchange, which has been negotiated in the ordinary course of trade, are entitled to be preferred to the general creditors, where the debtor becomes bankrupt?

6 U.S. (2 Cranch) at 385.

On the way to its finding that the priority claimed by the United States did not conflict with the Constitution, the Court opined:

It is undoubtedly a well established principle in the exposition of statutes, that every part is to be considered, and the intention of the legislature to be extracted from the whole. It is also true, that where great inconvenience will result from a particular construction, that construction is to be avoided, unless the meaning of the legislature be plain; in which case it must be obeyed.

6 U.S. (2 Cranch) at 386.

The Fourth Circuit summarized "plain meaning" in *In re Maxway Corp.*, 27 F.3d 980, 982–83 (CA4 1994):

Statutory interpretation necessarily begins with an analysis of the language of the statute. *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 685, 105 S.Ct. 2297, 2301, 85 L.Ed.2d 692 (1985). If the language is plain and "the statutory scheme is coherent and consistent," there is no need to inquire further. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240–41, 109 S.Ct. 1026, 1029–30, 103 L.Ed.2d 290 (1989). "[T]the sole function of the courts is to enforce [the statute] according to its terms." *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917). Therefore, courts should venture beyond the plain meaning of the statute only in those rare instances in which there is a clearly expressed legislative intent to the contrary, *Russello v. United States*, 464 U.S. 16, 20, 104 S.Ct. 296, 298–99, 78 L.Ed.2d 17 (1983), in which a literal application of the statute would thwart its obvious purpose, *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982), or in which a literal application of the statute would produce an absurd result, *United States v. American Trucking Ass'ns*, 310 U.S. 534, 543, 60 S.Ct. 1059, 1063–64, 84 L.Ed. 1345 (1940).

In *U.S. v. Hunter*, 459 F.2d 205, 210 (CA4 1972), Judge Sobeloff pointed out:

Legislative intent is first to be gathered from the plain meaning of the words of the statute. It is presumed that statutory language is used in its ordinary sense, with the meaning commonly attributed to it, unless the contrary clearly appears. *Caminetti v. United States*, 242 U.S. 470, 485–486, 37 S.Ct. 192 [, 194–195], 61 L.Ed. 442 (1917).

*In re Tooke,* 149 B.R. 687, 690 (M.D.Fla. 1992); *In re Fulton,* 52 B.R. 627, 630 (Bankr. Utah 1985).

The legislative purpose often cited for § 109(g)(2) is "to provide the court with greater authority to control abusive multiple filings." S.Rep No. 65, 98th Cong., 1st Sess. 74 (1983). *In re McKissie,* 103 B.R. 189 (Bankr.E.D.Ill.1989); *In re Hicks,* 138 B.R. 505, 506 (Bankr.Md.1992). Here, debtor waited too long to use his free pass out of bankruptcy. It was unfortunate for debtor that Berkeley filed a motion for relief from stay in the mistaken belief that payments were due. In so doing, it prevented debtor from dismissing his case and refiling with impunity. But the right to dismiss and refile a bankruptcy case was a right that Congress intended to limit. Indeed, cautious holders of the secured claims may use the filing of motions early in individual cases as a standard operating procedure in every bankruptcy case to bar serial filings. The decision of whether to keep the revolving door open, that is, by limiting the application of § 109(g)(2) as urged by debtor is one for Congress and not for this court.

The court is not unmindful that there is a substantial and thoughtful body of opinion supporting the position of debtor. *See In re Ulmer,* 19 F.3d 234, 236–37 (CA5 1994) ("[T]wo lines of cases have developed interpreting section 109(g)(2)"); *In re Copman,* 161 B.R. 821, 823–24 (Bankr.E.D.Mo.1993), provides a concise description of the schism and advocates forcefully a "discretionary standard" rather than a "mechanical application." *See also* Lundin, *Chapter 13 Bankruptcy,* § 1.85 2d ed. 1994; Wright, Comment, *Must Courts Apply Section 109(g)(2) When Debtors Intend No Abuse in an Earli-* *er Dismissal of Their Case?* VII Bankr. Dev.J. 103 (1990).

In reaching the conclusion that it has in the application of this provision, this court finds neither an absurd result, nor drafting error, nor any ambiguity in the statute whatsoever.[2]

An order will be entered denying the Motion to Amend Order Dismissing Case.

---

2. One voice in the wilderness is that of Judge Richard L. Bohanon, Chief Judge of the United States Bankruptcy Court of the Western District of Oklahoma, who has on numerous occasions noted the limitation that a lack of ambiguity in statutes places on the judiciary:

> The Supreme Court repeatedly directs use of judicial restraint in statutory interpretation. The Court admonishes that it is rarely necessary to go beyond the language of the statute itself, and that interpretation of the scope of codified law should be arrived at through guidance from the canons of statutory construction based upon a text based analysis. Under this methodology if a provision is unambiguous then the court must remain within its language. *Id.,* at 241, 109 S.Ct. at 1030. If it is ambiguous the court only then may look beyond the actual language to discern its reach.

> Although these directives appear clear and concise, their implementation is difficult and controversial. Some argue that such a course trivializes the role of the judiciary. They advocate a more activist role based on judicial determination of legislative intent.

*In re ZRM–Oklahoma Partnership,* 156 B.R. 67, 68–69 (Bankr.W.D.Okla.1993).