**In re Sheila Rice DICKERSON, Debtor.**

**CHRYSLER FINANCIAL CORPORATION, Appellant,**

**v.**

**Sheila Rice DICKERSON, Appellee.**

**No. 96–2804 M1/V.**

United States District Court, W.D. Tennessee, Western Division.

May 30, 1997.

H. Tucker Dewey, Stephen P. Hale, Armstrong Allen Prewitt Gentry Johnston & Holmes, Memphis, TN, for Chrysler Financial Corp.

Steven F. Bilsky, Law Offices of Steven Bilsky, Memphis, TN, for Sheila Rice Dickerson.

## ORDER REVERSING DECISION OF BANKRUPTCY COURT

McCALLA, District Judge.

Appellant, Chrysler Financial Corporation, appeals from a decision of the Bankruptcy Court denying its motion to dismiss and conditionally denying its motion for relief from the automatic stay. For the reason's set forth below, the decision of the Bankruptcy Court is REVERSED, and the case is REMANDED to the Bankruptcy Court for further proceedings not inconsistent with this opinion.

### *BACKGROUND*

On July 5, 1993, debtor, Sheila Rice Dickerson, signed as co-maker a Retail Installment Contract for the purchase of a 1993 Plymouth Sundance. This contract was subsequently assigned to Chrysler Financial Corporation ("Chrysler") for value and in good faith.

On May 16, 1995, the debtor filed a petition under Chapter 13 in the Bankruptcy Court for the Western District of Tennessee. Although a plan was confirmed in that case, no regular payments were made to Chrysler pursuant to that plan. Consequently, Chrysler filed a motion for relief from the automatic stay, and on December 1, 1995, Chrysler's motion was granted. Subsequently, on December 20, 1995, the Court entered the debtor's consent order voluntarily dismissing the case.

On January 24, 1996, the debtor filed a second petition under Chapter 13 in the

Bankruptcy Court for the Western District of Tennessee, thereby invoking the automatic stay of 11 U.S.C. § 362. In response, on March 29, 1996, Chrysler filed a motion for relief, wherein it requested a dismissal of the case pursuant to 11 U.S.C. § 109(g)(2), or, in the alternative, relief from the automatic stay. On May 7, 1996, a hearing was held on Chrysler's motion. At the hearing, the debtor testified that "she dismissed her prior case because of illness and unemployment. She further testified that she now is employed by Federal Express and that her plan payments are being made via payroll deduction. The debtor argued that she should be allowed to continue in the present case as she has acted in good faith." *In re Dickerson*, Case No. 96–21111, slip op. at 2–3 (Bankr.W.D. Tenn. June 26, 1996) (Boswell, J.) [hereinafter "Order"]. On June 26, 1996, the Bankruptcy Court entered a Memorandum Opinion and Order, in which it denied Chrysler's request for a dismissal of the case, conditionally denied Chrysler's request for relief from the automatic stay, and placed the debtor's case on probation.

Specifically, the court found that the application of § 109(g)(2) is discretionary and that Chrysler had not proven any causal connection between the debtor's voluntary dismissal and the debtor's subsequent refiling. The court also conditionally denied Chrysler's motion for relief from the automatic stay, finding that the debtor was currently making her plan payments through payroll deductions and so long as she continued to make such payments, Chrysler was adequately protected.

Chrysler then filed a timely notice of appeal on July 8, 1996, and an amended notice of appeal was filed on July 18, 1996. On appeal, Chrysler argues that the Bankruptcy Court erred in concluding that the application of § 109(g)(2) is discretionary and requiring Chrysler to establish a causal connection between the debtor's voluntary dismissal and subsequent refiling. Chrysler also argues that the Bankruptcy Court erred in denying its motion for relief from the automatic stay on the grounds that Chrysler is adequately protected as a result of the debtor's continued plan payments through payroll

deduction. Finally, Chrysler argues that the Bankruptcy Court erred in not finding that the present Chapter 13 plan is unfeasible. Because this Court concludes that the language of 11 U.S.C. § 109(g)(2) is mandatory, the Court declines to reach Chrysler's remaining arguments.

### STANDARD OF REVIEW

This Court reviews a judgment of the Bankruptcy Court under the standards set forth in Bankruptcy Rule 8013. Under Rule 8013, the Bankruptcy Court's findings of fact shall not be set aside unless those findings are "clearly erroneous." "A finding [of fact] is 'clearly erroneous' when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (citation omitted) Questions of law, however, are reviewed *de novo*. *In re Carled, Inc.*, 91 F.3d 811, 813 (6th Cir.1996).

### DISCUSSION

#### A.

Section 109(g) (2) of the bankruptcy code provides:

> (g) Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—
>
> * * * * * *
>
> (2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

11 U.S.C. § 109(g)(2). Although seemingly unambiguous on its face, there are at least three distinct lines of cases interpreting this statute. One line of cases holds that the language of § 109(g)(2) is mandatory—i.e., a court must dismiss a bankruptcy petition if the debtor was a debtor in another bankruptcy case within the preceding 180 days and the debtor requested and obtained a voluntary dismissal of the case following the filing

of a request for relief from the automatic stay provided by § 362. *E.g., In re Bigalk,* 813 F.2d 189, 190 (8th Cir.1987); *In re Tooke,* 133 B.R. 661, 663 (Bankr.M.D.Fla.1991); *In re Denson,* 56 B.R. 543, 546 (Bankr.N.D.Ala.1986); *In re Keziah,* 46 B.R. 551, 554 (Bankr.W.D.N.C.1985). A second line of cases appears to suggest that, although § 109(g)(2) is mandatory, § 109(g)(2) applies only if the motion for relief from stay was pending at the time of the voluntary dismissal. *E.g., In re Milton,* 82 B.R. 637 (Bankr.S.D.Ga.1988) (holding that § 109(g)(2) does not apply when there was no unresolved motion pending at the time when the debtor sought dismissal); *In re Jones,* 99 B.R. 412 (Bankr.E.D.Ark.1989) (holding that § 109(g)(2) "applies only if there is a contested matter pending at the time of the voluntary dismissal"); *In re Patton,* 49 B.R. 587 (Bankr.M.D.Ga.1985) (holding that § 109(g)(2) does not apply when the creditor seeking relief in the first case received the requested relief). A third line of cases holds that a court has discretion in deciding whether to dismiss under § 109(g)(2). *E.g., In re Luna,* 122 B.R. 575, 577 (9th Cir.BAP 1990) (holding that § 109(g)(2) is discretionary and does not apply if mechanical application would lead to unwarranted results); *In re Copman,* 161 B.R. 821, 823–24 (Bankr.E.D.Mo.1993) (requiring a causal connection between the request for relief from stay and the voluntary dismissal); *In re Hamm,* 157 B.R. 137, 140 (Bankr.E.D.Mo.1993); *In re Santana,* 110 B.R. 819, 821–22 (Bankr.W.D.Mich.1990).

In this case, the Bankruptcy Court found the reasoning of the third line of cases more persuasive. Specifically, the court, relying on *Copman,* held that "Chrysler did not prove any causal connection between the debtor's voluntary dismissal and the debtor's subsequent refiling." Order at 3. Of particular importance to the Bankruptcy Court was the fact that Chrysler apparently did not attempt to repossess the debtor's car from December 1, 1995 (the date on which the stay was lifted as to Chrysler), and January 24, 1996 (the date on which the debtor filed her second Chapter 13 petition), a period of fifty-five (55) days. *Id.* According to the Bankruptcy Court, therefore, "Chrysler failed to set forth that the debtor filed her present case with the intent to stall repossession by Chrysler." *Id.* at 4.

 Although facially appealing, this Court has previously held that the language of § 109(g)(2) is mandatory. *Kimbrough v. Bass,* Civ. No. 95–2674–M1/V, slip op. at 5 (W.D.Tenn. Oct. 23, 1996) (McCalla, J.). After reviewing the above cases once again, the Court concludes that there is no basis, either in the text itself or in the legislative history, for requiring that the creditor establish a causal connection between the request for relief and the voluntary dismissal. Instead, the statute specifically states that no individual can be a debtor if within the preceding 180 days that individual requested and received a voluntary dismissal of the first case following the filing of a request for relief from the automatic stay. If these preconditions are met, then the debtor is barred from filing the second petition until the lapse of the 180 day period, and the Bankruptcy Court is prohibited from accepting the petition for filing.

In reaching this conclusion, the Court finds the location of the 180 day limitation instructive. By including this limitation in § 109, which dictates who may be a debtor in the first place, Congress clearly intended the 180 day limitation to be a mandatory bar to the filing of any subsequent petition.

> Had Congress intended to grant the Bankruptcy Judges discretion in such matters, one would imagine it would have placed the 180 day rule in a Code section other than § 109. For example, § 109[g] could have been made a part of § 707, § 1112, or § 1325 thereby giving the Courts the opportunity to exercise discretion in the application of its provisions. However, § 109 is a part of the eligibility (to be a debtor) section which involves the subject matter jurisdiction of this Court. The 180–day rule having been placed there, the Court has no choice but to apply it; for indeed, it lacks the power to do otherwise.

*Keziah,* 46 B.R. at 554.

Moreover, those cases finding that a court has discretion in deciding whether to apply § 109(g)(2) have improperly shifted the focus

of the section from the actions of the debtor to the actions of the creditor. For example, in *Luna*, the court denied the creditor's motion to dismiss under § 109(g)(2), in part, because the creditor proceeded with a foreclosure sale even though it knew of the debtor's second bankruptcy filing. In affirming the decision of the Bankruptcy Court, the Ninth Circuit Bankruptcy Appellate Panel held that "[m]echanical application of section 109(g)(2) would reward Home Savings for acting in bad faith and punish Luna for acting in good faith. Accordingly, because [l]egislative enactments should never be construed as establishing statutory schemes that are illogical, unjust, or capricious, we conclude that the bankruptcy court properly declined to apply section 109(g)(2) to Luna's second bankruptcy petition." 122 B.R. at 577 (internal quotations and citations omitted).

Rather than applying the statute in a logical and just manner, however, the *Luna* court misapplied the statute. Section 109(g)(2) is designed to prevent misconduct by a debtor, not by a creditor. Therefore, any focus by the court on the conduct of the creditor in determining whether § 109(g)(2) should apply is misplaced. Instead, the court can deter and punish any such misconduct by the creditor by holding the creditor in contempt and imposing any appropriate sanctions. *See also* 11 U.S.C. § 362(h) ("An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, punitive damages.").

Likewise, the Court is unpersuaded by those cases that appear to suggest that, although § 109(g)(2) is mandatory, § 109(g)(2) applies only if there was a pending unresolved motion for relief from stay at the time the debtor voluntarily dismissed. *See In re Milton*, 82 B.R. 637 (Bankr.S.D.Ga.1988); *In re Jones*, 99 B.R. 412 (Bankr.E.D.Ark.1989); *In re Patton*, 49 B.R. 587 (Bankr.M.D.Ga. 1985). In fact, the Court notes that such a restrictive reading of § 109(g)(2) would eviscerate the underlying policy rationale for the rule. In enacting § 109(g)(2), Congress intended "to prevent debtors from frustrating creditors' attempts to recover funds owed to them" by prohibiting debtors from engaging in a series of filings and voluntarily dismissals, thereby continuously invoking the automatic stay of the bankruptcy code. *In re Ulmer*, 19 F.3d 234 (5th Cir.1994). By restricting the application of § 109(g)(2) to those cases where there is a pending, unresolved motion for relief from stay at the time of the voluntary dismissal, these courts ignore the reality of these proceedings. In fact, a literal interpretation of these cases would allow a debtor to refile continuously, thereby obtaining the protection of the automatic stay, so long as it did not dismiss the previous action while the motion for relief from stay was pending before the court. Thus, in cases where the relief from stay is granted prior to the voluntary dismissal, the debtor would be able to use the bankruptcy code to frustrate the ability of a creditor to regain its property—the exact result that § 109(g)(2) is designed to prevent.[1]

The obvious response to this is that the Bankruptcy Courts should be given the discretion to determine whether the debtor was abusing the bankruptcy code in this way. In effect, this would require that a causal connection be shown between the voluntary dismissal and the refiling of the petition. As noted above, however, there is nothing in the language of § 109(g)(2) or in the legislative history to support such a requirement.

### B.

In sum, the Court finds that the language of § 109(g)(2) is mandatory. The statute specifically states that no individual can be a debtor if within the preceding 180 days that individual requested and received a voluntary dismissal of the first case following the filing of a request for relief from the automatic stay. If these preconditions are met, then

---

1. Of course, the Court recognizes that the same policy rationale does not apply when a debtor's voluntary dismissal follows the denial or withdrawal of a creditor's motion for relief from stay. In such circumstances, there is no rational basis to assume that the debtor voluntarily dismissed and then refiled in order to frustrate a creditor's attempt to recover funds because the creditor clearly had no such right.

the debtor is barred from filing the second petition for 180 days after the voluntary dismissal, and the Bankruptcy Court is prohibited from accepting the petition for filing. As noted above, the Court interprets these provisions to include the situation present here, where the debtor voluntarily dismissed after the automatic stay was lifted.

In this case, it is undisputed that the debtor voluntarily dismissed her first Chapter 13 petition after the filing of a motion for relief from stay. Thus, pursuant to § 109(g)(2), the debtor could not refile any bankruptcy petition for 180 days after the date of her voluntary dismissal. Just 35 days after her voluntary dismissal, however, the debtor did in fact refile under Chapter 13. Accordingly, the Court finds that the debtor was barred from filing her petition on January 24, 1996, and the Bankruptcy Court should not have accepted the petition for filing.

## CONCLUSION

For the foregoing reasons, the decision of the Bankruptcy Court is REVERSED, and this case is REMANDED to the Bankruptcy Court for further proceedings not inconsistent with this opinion. On remand, the Bankruptcy Court is instructed to dismiss debtor's Chapter 13 petition.

 Finally, the Court notes that the running of the 180 day period is tolled during the pendency of an improperly filed bankruptcy petition. *In re Wilson*, 85 B.R. 72, 73 (Bankr.N.D.Ill.1988). As the court in *Wilson* explained, the rationale for tolling the 180 *day* period is to prevent the practical repeal of § 109(g)(2):

It would appear that any debtor's attorney worth his salt could file a case in the face of Section 109(g)(2) and postpone resolution of the 109(g)(2) issue for all or most of the 180 days, thereby nullifying the Congressional intent underlying Section 109(g)(2). Section 109(g)(2) [would be] thereby transformed from a provision to eliminate abuse and reduce creditor harassment, as Congress intended, to a provision which [would invite] even greater abuse and harassment.

*Id.*

This case was originally filed on January 24, 1996, just 35 days after the case was voluntarily dismissed. Accordingly, debtor must wait an additional 145 days from the date of dismissal in accordance with this Order before filing another bankruptcy petition.