**In re Carlton Lee ROLAND and Annie Vera Roland, Debtors.**

**Bankruptcy No. 97–42187–293.**

United States Bankruptcy Court, E.D. Missouri, Eastern Division.

Oct. 14, 1997.

Suzanne R. Reinhold, St. Louis, MO, for Debtors.

Dean Prober, Woodland Hills, CA, for UCLC.

James S. Cole, St. Louis, MO, for GMAC.

John V. LaBarge, Jr., St. Louis, MO, Trustee.

## MEMORANDUM OPINION

DAVID P. MCDONALD, Bankruptcy Judge.

### JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(A) and (L), which the Court may hear and determine.

### PROCEDURAL BACKGROUND

1. On April 25, 1995, Carlton Lee Roland and Annie Vera Roland filed a voluntary petition of bankruptcy under Chapter 13 of

the Bankruptcy Code (11 U.S.C. §§ 101–1330).[1]

2. United Companies Lending Corporation (UCLC), the Debtors' mortgagee, objected to Debtors' plan and moved for relief from the automatic stay. UCLC's motion for relief alleged an unpaid principal balance of $106,266.56, pre-petition delinquencies of $12,073.90 and post-petition delinquencies of $5,177.61.

3. On April 17, 1996, Debtors and UCLC entered and filed with the Court a Stipulation and Order Re; Adequate Protection (Stipulation). In the Stipulation, the parties agreed that Debtors had missed three post-petition mortgage payments and agreed to a schedule through which the Debtors would make up these missed payments. The Stipulation also provided that upon Debtors' failure to make the payments called for in the Stipulation, UCLC would send them notice of their breach and also file for relief from the automatic stay. The Stipulation also provided that the Debtors' failure to file an objection to UCLC's Notice of Breach would raise a presumption that they had no defense to the breach and, therefore, consented to the grant of relief.

5. Three times during the second half of 1996 UCLC filed a notice of breach of the Stipulation and each time rescinded its filing.

6. On January 21, 1997, UCLC again filed a notice of breach and on February 28, 1997 it filed a notice that Debtors had not responded to the notice of breach.

7. Judge Barry S. Schermer of this Court granted UCLC relief from the automatic stay on March 6, 1997.

8. On March 10, 1997, Debtors filed a Motion to Dismiss their case. The Court entered an Order granting Debtors' Motion to Dismiss on March 13, 1997.

9. On March 10, 1997 Debtors commenced this case by filing a voluntary petition seeking bankruptcy relief under Chapter 13 of the Bankruptcy Code.

10. On April 28, 1997, UICLC filed Objections to Proposed Chapter 13 Plan and Confirmation Therof (Objection). In its Objection, UCLC argued that: Debtors' plan is not feasible; Debtors' have failed to demonstrate "cause" to justify a plan longer than 36 months; section 109(g) bars the Debtors' petition as a successive filing; Debtors' plan does not provide for interest on the arrearages Debtors owe to UCLC; and Debtors' plan was not filed in good faith as required by section 1325.

11. Counsel for the parties explained their positions via letter briefs submitted to the Court.[2]

12. The Court held a hearing on UCLC's Objection on July 31, 1997 .[3] At the hearing, counsel for UCLC asked the Court to dismiss the Rolands' case per section 109(g)(2) and to bar them from refiling for 180 days from the date of the dismissal.

13. Debtor Annie Vera Roland (Roland) testified at the hearing. Roland admitted that she and her husband had filed and dismissed a previous Chapter 13 case. Roland explained that when serious illnesses to both of their adult sons caused them to incur unexpected expenses she and her husband had to choose whether to apply their money to the care of their sons or to the payment plan they had negotiated with UCLC. The Rolands chose to spend their money on the expenses associated with their sons' life-threatening illnesses and so breached the Stipulation's payment plan.

### FACTUAL BACKGROUND

For the purpose of deciding the issues raised by UCLC's Objection, the Court makes the following factual findings:

1. Sometime in 1995 while the Rolands' prior Chapter 13 case was pending, their thirty-eight year-old son suffered a stroke which left him unable to live on his own. He

---

**1.** Unless otherwise noted, all sections referenced are sections of the Bankruptcy Code.

**2.** Counsel for Debtors filed a letter brief and counsel for UCLC filed two letter briefs with the Court. The Court offered Debtors' counsel the opportunity to file a response to UCLC's second letter brief but she did not file a response.

**3.** Counsel for General Motors Acceptance Corporation (GMAC) also participated in the July 31 hearing.

applied for and was denied social security disability benefits. Consequently, Debtors' thirty-eight year-old son moved into their home.

2. Later while the Debtors' prior bankruptcy case was pending, their second son (also an adult) suffered a liver problem precipitated by a reaction to medication he was taking to control his diabetes. The second son's life was in danger and Mrs. Roland flew to Seattle to be with him.

3. Their sons' illnesses caused the Debtors to incur unanticipated expenses which in turn resulted in their breach of the Stipulation they had negotiated with UCLC.

## DISCUSSION

Section 109 of the Bankruptcy Code defines who may qualify as a debtor eligible for bankruptcy relief. In subsection (g)(2), section 109 provides that:

> [n]otwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—
>
> .   .   .   .   .
>
> (2) the debtor requested and obtained voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided in section 362 of this title.

There is a split of authority regarding the interpretation and, therefore, application of section 109(g)(2). Some courts favor what has been described as the "mandatory" application of section 109(g)(2). *See In re Bigalk,* 813 F.2d 189 (8th Cir.1987) (per curiam); *In re Andersson,* 209 B.R. 76 (6th Cir. BAP 1997); *In re Dickerson,* 209 B.R. 703 (D.Tenn.1997); *In re Jarboe,* 177 B.R. 242 (Bankr.D.Md.1995); *In re Gregory,* 110 B.R. 911 (Bankr.E.D.Mo.1989). Other courts maintain that section 109(g)(2)'s application is "discretionary." *See In re Luna,* 122 B.R. 575 (9th Cir. BAP 1991); *In re Duncan,* 182 B.R. 156 (Bankr.W.D.Va.1995); *In re Copman,* 161 B.R. 821 (Bankr.E.D.Mo.1993).

Some of the courts that have found the application of section 109(g)(2) to be "discre-

tionary" have required a causal connection between the debtor's voluntary dismissal of his prior bankruptcy case and the creditor's filing of a motion for relief from the stay. *See* 182 B.R. 156, 161 B.R. 821. The *In re Copman* court reasoned that the plain meaning of " 'following' in the statute requires some relationship between the timing of the 362 request and the voluntary dismissal. Furthermore, by requiring that the debtor both 'request' and 'obtain' the dismissal after the request for relief, the statute requires a causal connection such that the request for relief triggers the dismissal." 161 B.R. at 822. Further, the *In re Copman* court reasoned that its opinion followed from the Eighth Circuit's *In re Bigalk* decision because in that case the debtors had filed for bankruptcy relief on the eve of foreclosure four times and in the three dismissed cases the debtors had voluntarily dismissed their case when the foreclosing creditor filed its motion for relief. *Id.* In other words, the *In re Copman* court maintained that *In re Bigalk* supported its reading of the term "following" because it reached the same result that application of *In re Copman* court's reasoning would reach; such a conclusion does not necessarily follow. The *In re Bigalk* court does not explain how it interprets "following" in section 109(g)(2). This Court notes, however, that the *In re Bigalk* court would have reached the same result whether it accepted the *In re Copman* court's interpretation of "following" in section 109(g)(2) or whether it understood "following" to mean nothing more than a description of the timing of two events.

In dicta the Fifth Circuit has suggested that application of section 109(g)(2) is discretionary. *Moran v. Frisard,* 19 F.3d 234, 236 n. 9 (5th Cir.1994). The *Moran* case involved the appeal of an award of sanctions against an attorney who filed a second bankruptcy for a debtor within 180 days of the debtor's dismissal of a case in which a creditor had filed, but the bankruptcy court had not ruled on, a motion for relief from the automatic stay. *Id.* at 234–35. Appellant argued that because the bankruptcy court had deferred ruling on the creditor's motion for relief until it determined whether the debtor was entitled to a homestead exemp-

tion, that motion was not before the bankruptcy court when the first case was dismissed and, therefore, it was not clearly in contravention of section 109(g)(2) to file the second bankruptcy petition. *Id.* at 236. The circuit court rejected the premise of appellant's argument, namely, that the motion for relief was not before the bankruptcy court when debtor's first case was dismissed. *Id.* The *Moran* court, however, noted that although there was no need to address whether section 109(g)(2) would bar successive filing where the creditor withdrew its request for relief from the automatic stay before a debtor voluntary dismissed his or her first case, in such circumstances an attorney could reasonably conclude that section 109(g)(2) did not apply. *Id.* at 236 n. 9.

The bankruptcy appellate panel for the Ninth Circuit has declined to follow the line of cases holding that the application of section 109(g)(2) is "mandatory." *In re Luna,* 122 B.R. 575 (9th Cir. BAP 1991). In *In re Luna,* the debtor dismissed her first bankruptcy case because the creditor who challenged her second filing had failed to abide by an order the bankruptcy court had entered in the first case. 122 B.R. at 576. The *In re Luna* appellate panel believed that to bar the debtor's successive filing under section 109(g)(2) would "reward [the creditor] for acting in bad faith and punish Luna for acting in good faith" and also lead to an "illogical and unjust result." *Id.*

The courts that have found the application of section 109(g)(2) to be "mandatory" have found the section's language to be unambiguous and plain. *See In re Andersson,* 209 B.R. at 77–78; *In re Dickerson,* 209 B.R. at 706; *In re Gregory,* 110 B.R. at 912. These courts have read the term "following" in section 109(g)(2) to reflect a temporal relationship only. In each instance, these courts found that section 109(g)(2) applied and barred a successive filing when the debtor had voluntarily dismissed a prior bankruptcy case after a creditor filed a motion for relief from the automatic stay. 209 B.R. at 77–78; 110 B.R. at 912. The *Dickerson* court characterized the *In re Luna* court's decision as a "misapplication of the statute" because the court focused on the creditor's and not the

debtor's conduct. 209 B.R. at 706. That court also rejected the reasoning of *In re Copman* and *In re Duncan,* finding that "there is no basis in either the text or in the legislative history, for requiring the creditor to establish a causal connection between the request for relief and the voluntary dismissal." *Id.*

■ Regardless of whether one applies the view that a court may utilize discretion in applying section 109(g)(2) or, the alternative view that the section's application is mandatory, it is apparent that section 109(g)(2) applies and bars the Rolands' successive bankruptcy petition. The Rolands voluntarily dismissed their prior bankruptcy case after UCLC moved for relief from the automatic stay. In fact, Debtors dismissed their prior case immediately after UCLC obtained relief from the automatic stay and filed this successive petition to thwart an imminent foreclosure. The timing of the grant of relief, dismissal and refiling together with Roland's testimony that one reason she and her husband needed to file a second Chapter 13 case was to have a place to live, suggest that the dismissal of the first case was causally linked with the request for and subsequent grant of relief from the stay to UCLC. Therefore, whether one views section 109(g)(2) as a section to be mandatorily applied or discretionarily applied, it barred the Rolands from filing a successive bankruptcy petition within 180 days of the voluntary dismissal of their first case.

■ Although section 109(g)(2), by its terms, bars a debtor from filing a successive petition within 180 days of the voluntary dismissal of a prior case in which a creditor moved for relief from the automatic stay, courts have applied the section to bar debtors from filing bankruptcy for 180 days from the date on which a filing barred by section 109(g)(2) is finally dismissed. *See In re Dickerson,* 209 B.R. at 708; *In re Gregory,* 110 B.R. at 912. A failure to apply the 180 day period from the date of the final dismissal of the improperly filed successive bankruptcy case would defeat the purpose of the 180 day period because it frequently takes longer than 180 days for the process of dismissing the improperly filed case to occur.

209 B.R. at 708. The Court, therefore, will bar the Rolands from filing a successive bankruptcy case for 180 days from the date this opinion and accompanying order are entered.